In the Matter of the Accounting of ELIZABETH P. DE G. JAMES, as Ancillary Executrix under the Will of AMADEE DE G. JAMES, Deceased, Appellant.

ELIZABETH B. VON DER DECKEN et al., Appellants; PAULINE A. DE LA METTRIE et al., Respondents.

Debtor and creditor — judgment — comity — exequatur — French decree on exequatur directing payment of judgment obtained in this State — payment of sum in francs as directed by French decree operates as complete execution of judgment — sufficiency of release and satisfaction given by judgment creditors, to fully satisfy American judgment.

1. A payment in obedience to a French decree on *exequatur*, which directed execution of a judgment obtained in this State by payment of a stated number of francs, operates as a complete satisfaction of the judgment where the creditors selected that method to enforce it and obtain the money that was due, elected their measure of value and medium of exchange and made their choice of the date upon which the dollar should be converted into francs. The American judgment having been executed in France exactly as the creditors demanded, it must be held to have been fully paid.

2. An argument that an instrument executed and delivered by the judgment creditors upon payment of the sum in francs, as directed by the French decree, was not intended fully to satisfy the American judgment but purposed merely to release the lien of the judgment upon the judgment debtor's property in France and to reserve the right to collect the difference between dollars and francs on the value of the American judgment, cannot be sustained, where by its terms

such instrument gave " a good and valid release " for the sum in francs translated from the amount of the judgment in dollars, acknowledged pure and simple satisfaction and consented to the cancellation of liens against the debtor's property in France.

*Matter of James*, 221 App. Div. 321, reversed.

(Argued February 13, 1928; decided April 3, 1928.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 30, 1927, which reversed as matter of law two orders of the Ulster County Surrogate's Court, one granting a motion of the ancillary executrix to declare satisfied a decree awarding certain sums to legatees of Amadee de G. James, deceased, and to vacate executions issued thereon and the other denying a motion to vacate and set aside the first order.

*H. H. Breland* and *Emory R. Buckner* for appellant. Where two judgments are each founded upon the same debt or cause of action, payment of either satisfies both, even though they are for different amounts. (Freeman on Judgments [5th ed.], § 1126; *Matter of Williams*, 208 N. Y. 32; *Dahlstrom* v. *Gemunder*, 198 N. Y. 449; *Cox* v. *Smith*, 10 Oreg. 418; *Woods* v. *Pangburn*, 75 N. Y. 495; *Lovejoy* v. *Murray*, 3 Wall. 1; *Foy* v. *Barry*, 159 App. Div. 749; *Breslin* v. *Peck*, 38 Hun, 623.) The rule that payment of one judgment satisfies all judgments for the same debt is equally applicable where a French judgment has been obtained upon an American judgment. (*Johnston* v. *Compagnie Generale Trans-Atlantique*, 242 N. Y. 381; *Gould* v. *Gould*, 235 N. Y. 14; *Matter of Williams*, 208 N. Y. 32; *Taylor* v. *Hollard*, [1902] 1 K. B. 767; *Barber* v. *Lamb*, 8 C. B. [N. S.] 95.) The depreciation of the franc, thereby rendering the French judgment of less value than the American judgments, does not affect the application of the rule that payment of one judgment satisfies all judgments for the same debt or cause of action. (Freeman on Judgments [5th ed.], § 1126; *Lovejoy* v.

*Murray*, 3 Wall. 1; *Foy* v. *Barry*, 159 App. Div. 749; *Breslin* v. *Peck*, 38 Hun, 623; *Taylor* v. *Hollard*, [1902] 1 K. B. 767; *Barber* v. *Lamb*, 8 C. B. [N. S.] 95; *Deutche Bank* v. *Humphrey*, 272 U. S. 517.) The so-called "reservation" in the "release and satisfaction" given by the judgment creditors upon receiving payment of the French judgment is not a contract. (*Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Robinson* v. *Jewett*, 116 N. Y. 40; *Joffray* v. *Davis*, 124 N. Y. 164; *Davis* v. *Walker*, 206 App. Div. 565; *Schwartzreich* v. *Bauman-Busch, Inc.*, 231 N. Y. 196.) Where one of two judgments for the same debt has been paid, any attempted "reservation" of the other judgment is void. (*Dahlstrom* v. *Gemunder*, 198 N. Y. 449; *Cox* v. *Smith*, 10 Oreg. 418; *Harbeck* v. *Vanderbilt*, 20 N. Y. 395; Freeman on Judgments [5th ed.], § 1126; *Walsh* v. *N. Y. C. R. R. Co.*, 204 N. Y. 58.)

*C. Alexander Capron* and *David Kelly* for Farmers Loan and Trust Company, as guardian, appellant.

*J. Noble Hayes* for respondents. The orders of the Surrogate's Court of February 7 and the related order of March 7, 1927, marking satisfied in full respondents' partly paid judgments, and without hearing the receiver, were erroneous in all respects, and were properly reversed by the Appellate Division, and the order appealed from should be affirmed, or the appeal dismissed. (*Ellis* v. *Esson*, 50 Wis. 147; *Chicago* v. *Babouck*, 143 Ill. 358; *Long* v. *Long*, 57 Iowa, 493; *Sloan* v. *Herrick*, 49 Vt. 327; *Snow* v. *Chandler*, 10 N. H. 92; *Walsh* v. *N. Y. Central R. R. Co.*, 204 N. Y. 58; *Gilbert* v. *Finch*, 173 N. Y. 455; *Witman* v. *Judd L. Co.*, 124 N. Y. 565; *Matter of N. Y. & Lackawanna R. R. Co.*, 98 N. Y. 453; *Jeffrey* v. *Davis*, 124 N. Y. 164; *Rothschild* v. *Mosbacher*, 26 App. Div. 170; *Manuse* v. *Hessington*, 205 N. Y. 36; *Simmons* v. *Superior Counsel*, 82 App. Div. 619; *Matter of Williams*, 208 N. Y. 25.)

O'BRIEN, J.    Amadee de Gasquet James died in France in 1903.    By his will he gave to his wife, Elizabeth Pratt de Gasquet James, all his property situated in Europe and to his four children all his property situated in the United States.    He appointed his wife executrix and in 1904 the surrogate of Ulster county in this State granted ancillary letters testamentary.    November 3, 1917, a decree was entered in the Surrogate's Court charging the executrix with the sum of $65,133.25 and interest from March 21, 1915, in favor of the testator's son George W. Pratt de Gasquet James and the same sum in favor of the testator's daughter Pauline Andree de la Mettrie.    Executions were returned unsatisfied.    The son and daughter, citizens of the French Republic, on October 5, 1922, instituted in France a proceeding against the executrix, their mother, a resident of that country, to enforce there the judgment obtained in Ulster county. The proceeding in France resulted favorably to the judgment creditors and in December, 1925, the executrix made payment as directed by the French courts.    After compliance with the French decree, the executrix applied to the surrogate of Ulster county for an order vacating the judgment of November 3, 1917, and satisfying it of record.    His order of February 7, 1927, so decreeing has been reversed by the Appellate Division and the appeal is now here.    The controversy arises from the fact that the payment in francs calculated as of the date of the institution of the French proceeding is worth less than the amount would be if calculated as of the date of payment and less than $65,133.25.    We must determine the effect of the French judgment and of the judgment creditors' release.

The proceeding in the French courts assumed the form of an *exequatur*.    The judgment creditors' expert witness on French law explains by affidavit in this proceeding that in France an *exequatur* is regarded as nothing more than an execution of a judgment rendered in a foreign

jurisdiction. He states his opinion to be that only one judgment exists in favor of Georges de Gasquet James and Pauline Andree de la Mettrie and that the effect of the French proceeding is merely an execution of that judgment obtained in Ulster county. The judgment debtor's expert witness also says that the American judgment is " made executory in France " by the French judgment: The mandate of the French court is that the " afore cited judgment shall be purely and simply executed in France, according to the law of procedure, in spite of opposition or appeal " and that " for its execution in France the debt in dollars shall be converted into francs according to the rate of exchange practiced on the Paris Bourse the day the *exequatur* was asked for, namely, on the 5th of October, 1922." The value of the Ulster county judgment, with deduction for partial payment previously made and with additions for expenses and interest was equal to 2,303,248.59 francs computed according to the rate of exchange at 13 francs to the dollar as of October 5, 1922. This precisely calculated sum was ordered paid and on December 15, 1925, the executrix paid it. Both expert witnesses concede that under French law the date for translating the American judgment from dollars into francs rested within the discretion of the French courts and that judicial power resided there to have fixed the date of payment rather than the date of the institution of the proceeding. Both testify the fact to be that it was at the request of the judgment creditors that October 5, 1922, was the date appointed by the court and both express the opinion that the creditors could have designated the date of payment as the time for translation.

The payment in obedience to the French decree on *exequatur* operates as a complete execution of the Ulster county judgment. The creditors selected that method to enforce their judgment and to obtain the money that was due. The executrix had obstructed payment in this

country, and her son and daughter, despairing of success here, determined to invoke the laws of the country of which they are citizens and where they reside. They elected their measure of value and medium of exchange. They made their choice of the date upon which the dollar should be converted into francs. When they instituted their proceeding to collect, they could not predict the time of payment, nor could they forecast the future rate of exchange. They asked the court to direct payment at the rate of thirteen francs to the dollar and the court consented. The franc fell to half its value and then the debtor, after years of dilatory tactics, hastened to comply with the order of the court and paid the judgment. The judicial mandate on *exequatur* did not direct her to pay any specified number of dollars. It directed execution of the American judgment by the payment of 2,303,248.59 francs and not otherwise. The debtor has obeyed that command and has handed the last centime to her creditors. If the franc had risen to twice its value instead of shrunk to half she would have been bound by the same inexorable decree. She was obliged to pay that certain number of francs without regard to their value. After the translation of the judgment, her liability was in francs alone. Her creditors, misjudging the trend of currency values selected an ill-fated time for the conversion of dollars into francs and their misfortune has chanced to enrich their adversary. The hazard was theirs and they lost. " An obligation in terms of the currency of a country takes the risk of currency fluctuations and whether creditor or debtor profits by the change the law takes no account of it. (*Legal Tender Cases*, 12 Wall. 457, 548, 549.) Obviously, in fact a dollar or a mark may have different values at different times but to the law that establishes it it is always the same." (*Deutsche Bank* v. *Humphrey*, 272 U. S. 517, 519.) The American judgment has been executed in France exactly as the creditors demanded. It has, we think, been fully paid.

The Appellate Division supports respondents' contention that the judgment of November 3, 1917, has been only partially executed. That learned court holds that the judgment has been satisfied merely to the extent of the money actually received in American dollars. Its conclusion is based upon its interpretation of the release and satisfaction given by the judgment creditors. That instrument, after reciting in francs the total amount of the judgment plus interest and expenses, includes this statement: " For which sum Mme. de la Mettrie and M. de Gasquet James give to Mme. de Gasquet James a good and valid release. It being expressly specified that the said release final as to its effect on all the property and securities which may exist in France, is not given except under the most express reservations of all audits, accounts and final judgments which may exist in America and of all the other sums which may be owing by Madame widow de Gasquet James to M. Georges de Gasquet James in virtue of other debts and judicial decisions. * * * By reason of the preceding payment Mme. de la Mettrie and M. de Gasquet James in waiving all their rights, actions, liens and hypothecations, acknowledge pure and simple satisfaction and consent to the entire and final cancellation of all inscriptions and transcriptions of levy and of notice of levy upon the real property owned by Mme. de Gasquet James in France." Respondents argue, and the Appellate Division accepts the argument, that this instrument was not intended fully to satisfy the American judgment but purposed merely to release the lien of the judgment upon Madame James' property in France and to reserve the right to collect the difference between dollars and francs on the value of the American judgment.

Both judgment creditors " give a good and valid release " for a sum in francs translated from the amount of the judgment in dollars, they " acknowledge pure and simple satisfaction," and consent to the cancellation of

liens against the debtor's property in France. The main purpose of the proceeding was not to impose liens. The object was to collect the Ulster county judgment. The attachment of the liens was a subordinate detail designed to make the main purpose effective. Under French law, as stated by the opinion witnesses, the debtor could have caused the discharge of the liens by paying the amount of the judgment into court. So the consent to cancel does not indicate a mere partial payment or acknowledgment of a mere partial payment of the judgment. It reveals the fact that the creditors by agreement, after payment and receipt of the full amount of the judgment, calculated as of a date selected by the creditors, performed an act into which they would otherwise have been coerced by judicial process. No longer could they threaten the debtor's French property. We think that the judgment creditors' reservations constitute nothing except an attempt to preserve rights which did not exist. The record does not inform us of any audits or accounts except those which were included in the final judgment of November 3, 1917. Such judgments or decrees as " may exist in America " are mandates issued to enforce that judgment. In so far as those judgments in the receiver's proceedings in this State remained unexecuted, they were merged in the French *exequatur*. Nothing was left for reservation. All had been extinguished when the 2,303,248.59 francs had been paid. The son, though not the daughter, attempted likewise to reserve " other sums which may be owing " to him by his mother " in virtue of other debts and judicial decisions." We are not informed of the nature of these other sums. If the " judicial decisions " are intended to refer to those upon which the judgment of November 3, 1917, is based, we can do no more than to repeat that they cannot be the subject of reservation. The executrix, too, attempted in the release to make certain reservations. She assumed to reserve the right to object to the accuracy of the account

and to the fixation of the rate of interest.  Until this judgment, executory in France, shall be corrected by the French courts, it must stand.  One party paid the judgment, the others accepted the payment, gave good and valid release and acknowledged pure and simple satisfaction.

The order of the Appellate Division should be reversed and that of the Surrogate's Court affirmed, with costs in the Appellate Division and in this court.

CARDOZO, Ch. J., dissents and votes for affirmance upon the ground that the French judgment was a security or form of execution for the enforcement and collection of the judgment recovered in New York; that payment of an obligation secondary and ancillary did not discharge the principal or primary obligation beyond the value of the foreign money at the time when payment was received; that appreciation of the franc between the date of the French judgment and the date of its discharge would not have involved the judgment debtor in any undue risk of hardship or injustice, since she was free at any time by payment of the New York judgment, the principal obligation, to compel the satisfaction of obligations that were collateral or secondary; and finally that the form of the so-called release, to which the judgment debtor was a party, is such as to justify a finding that by a bilateral agreement the payment of the French judgment was to be " final with regard to its effect on all the property and securities which may exist in France," but was to be accepted upon account in respect of any judgments recovered in America.

ANDREWS, LEHMAN and KELLOGG, JJ., concur with O'BRIEN, J.; CARDOZO, Ch. J., dissents in memorandum, in which POUND and CRANE, JJ., concur.

Ordered accordingly.