In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by JAMES A. BEHA, as Superintendent of Insurance, Respondent, for an Order to Take Possession of the Property of the FIRST RUSSIAN INSURANCE COMPANY, ESTABLISHED IN 1827, Respondent.

G. FRANK DOUGHERTY, as Assignee of LEON L. SAMUELSON, Appellant.

(Argued January 5, 1931; decided February 10, 1931.)

*Walter H. Pollak, G. Frank Dougherty* and *Charles S. S. Epstein* for appellant. In the absence of insolvency the rights of other creditors do not require the disallowance of appellant's claim. (*Matter of People* [*Norske-Lloyd Ins. Co.*], 242 N. Y. 164; *Matter of People* [*City Equitable Ins. Co.*], 238 N. Y. 157; *Matter of Second Russian Ins. Co.*, 244 N. Y. 609; *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371; *Graham* v. *Ry. Co.*, 102 U. S. 148; *Abrahams* v. *Beneke*, 155 App. Div. 525; *Schloss* v. *Schloss*, 14 App. Div. 333; *Matter of Thompson*, 10 App. Div. 40; *Chautauqua Citizens' State Bank* v. *First Nat. Bank*, 98 Kan. 109; *National Surety Co.* v. *Graves*, 211 Ala. 533; *Brooks* v. *Smith*, 290 Fed. Rep. 33.)

*James F. Donnelly, Alfred C. Bennett, John M. Downes* and *Clarence C. Fowler* for Superintendent of Insurance, respondent. Foreign non-attachment claims, based upon policies issued abroad by the parent company, cannot be paid by the Superintendent of Insurance. (*Matter of People* [*City Equitable Fire Ins. Co.*], 238 N. Y. 147; *Matter of People* [*Norske Lloyd Ins. Co.*], 223 App. Div. 823; 242 N. Y. 148; 249 N. Y. 139; *Matter of People* [*Second Russian Ins. Co.*], 219 App. Div. 46; 244 N. Y. 606; 224 App. Div. 105; 249 N. Y. 30; *Matter of People* [*Russian Reinsurance Co.*], 223 App. Div. 378; *Matter of People* [*Five Russian Ins. Companies*], 229 App. Div. 537; *Matter of People* [*Consolidated Assur. Co.*], 230 App. Div. 110.)

*Frederick B. Campbell* and *Paul C. Whipp* for First Russian Insurance Company, respondent. The policy does not promise payment in gold rubles, but merely specifies payment in rubles. The evidence does not sustain an exchange value of 51½ cents per ruble on June

10, 1923. (*Perry* v. *Equitable Life Assur. Soc.*, 45 T. L. R. 468; *Buerger* v. *New York Life Ins. Co.*, 43 T. L. R. 601; *Sokoloff* v. *National City Bank*, 130 Misc. Rep. 66; 223 App. Div. 754; 250 N. Y. 69; *Zimmerman* v. *R. & H. Chemical Co.*, 240 N. Y. 501.)

CARDOZO, Ch. J. Appellant, the assignee of a foreign policyholder of First Russian Insurance Company, filed a proof of claim with the Superintendent of Insurance to recover the amount due under a policy of insurance issued to his assignor in Russia in 1910.

By the policy the insurer undertook, in consideration of semi-annual premiums, to pay to the insured in June, 1923, the sum of 10,000 rubles. The insured paid the premiums until June, 1918, when the revolution in Russia and the decrees of the Soviet Republic prevented further payments at the place stated in the contract. Among the provisions of the policy is one to the effect that after premiums have been paid for three years, the insurance shall be continued, even though there are later defaults, but only at a reduced amount. The appellant has given evidence that the amount due under this provision in June, 1923, when the insurance became payable, was 5,921 rubles instead of 10,000 rubles, the face amount of the policy. No objection to this calculation is made by the respondents. For the purpose of the appeal we assume it to be accurate.

The Supreme Court at Special Term confirming the report of a referee disallowed the proof of claim on the ground that the Superintendent of Insurance was without authority to liquidate a claim arising out of foreign business. The Appellate Division unanimously affirmed.

In an opinion handed down herewith, we have held that the liquidator may be required before distributing the surplus to consider claims of creditors arising out of foreign business, and to pay them if allowed. A different question arises where the corporation is insolvent, or

where application for allowance is made before the ascertainment of the surplus and the adoption of a plan for a just and equitable distribution. The insurer in this case is solvent, and payment, if now directed, will be incidental to a general plan whereby all the interests affected will be considered and protected.

The claim being provable, a question remains as to the measure of recovery.

The referee found that in June, 1923, when the contract was broken, the value of 5,921 rubles was equivalent to $3,049.31 in money of the United States.

We are to determine whether this finding is supported by the evidence.

At the time of the Soviet revolution, the gold ruble of the Russian Empire had been supplanted by a paper currency with a value steadily depreciating. The Soviet Republic established at the beginnings of its history a currency in money tokens which declined by leaps and bounds. In October, 1922, an attempt was made to re-establish the gold standard. By a decree of that date there was adopted a gold coin known as the chervonetz, which had the value of ten gold rubles of the empire. With the chervonetz there circulated treasury notes, also redeemable in gold, for one, two, three and five rubles, the value of a gold ruble being equal to fifty-one and one-half cents of our money.

If these were the only facts to be considered, the solution of the problem would be comparatively simple. It is complicated by others. The depreciated paper currency was not called in by the Soviet authorities till August, 1923, or later, and passed from hand to hand in the meantime with the quality of legal tender. None the less, the chervonetz and its subdivisions had been turned into the standard, and the rate of exchange between the two competing currencies was re-established monthly or even oftener to correspond with the current depreciation in the value of the tokens.

We interpret the record as meaning that in June, 1923, the Russian ruble was again on a gold basis, and that where token rubles were paid in satisfaction of a debt, the number would have to be increased to. the extent necessary to make the payment equivalent to one in gold. If this interpretation is correct, the sum due to the appellant should be computed upon the basis of the value of the chervonetz or of rubles of like fineness (*Buerger* v. *New York Life Assur. Co.*, 43 T. L. R. 601; cf. *Matter of Lendle*, 250 N. Y. 502).

The decision must be understood to be confined to the record now before us. We do not attempt to say to what extent a different record, exhibiting in a different light the history of the ruble, would exact a different conclusion. In particular we reserve the question whether the insurer would be liable on the basis of the gold coinage if in truth it had an option to discharge the debt in gold or by the same number of rubles in depreciated paper (cf. Williston, Contracts, vol. 3, § 1407; American Law Institute, Restatement of the Law of Contracts, § 335). We read the record otherwise.

The Soviet decree restoring the gold standard is to be ranked with those " every-day transactions of business or domestic life " that " are not subject to impeachment, though the form may have been regulated by the command of the usurping government " (*Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. at p. 29, and cases there cited; *Thorington* v. *Smith*, 8 Wall. [U. S.] 1; *Stewart* v. *Salamon*, 94 U. S. 434, 435).

The order of the Appellate Division and that of the Special Term should be reversed, and payment directed to be made to the appellant in the sum fixed by the referee, $3,049.31, with interest from June 23, 1923, and costs in all the courts.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.