## TILLMAN v. RUSSO ASIATIC BANK.
### No. 402.

Circuit Court of Appeals, Second Circuit.
July 7, 1931.

As Modified on Denial of Rehearing July 24, 1931.

Borris M. Komar, of New York City, for appellant.

Evarts, Choate, Sherman & Leon, of New York City (Maurice Leon, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Two causes of action are involved in this appeal. In the first cause of action the following facts are alleged:

The plaintiff opened a current checking account with the defendant, a Russian bank in the city of Petrograd. On September 18, 1918, he had to his credit in the account upwards of 114,000 rubles, and drew a check on the bank for 72,000 rubles to the order of

one Heidemann, which was dishonored upon presentation. The plaintiff paid the amount of the check to Heidemann. Thereafter on August 24, 1927, plaintiff brought suit against the defendant for failing to pay the check, and sought recovery in the sum of $37,008, with interest from September 18, 1918, upon the theory that the value of rubles was 51.4 cents in United States currency. Upon the trial, the jury rendered a verdict in favor of the defendant on the first cause of action.

In the second cause of action the following facts were alleged:

On November 18, 1919, the defendant bank delivered its draft to one Fajans, directed to its office in Novorossiysk, Russia, wherein it required such office to pay Fajans 100,-000 rubles within four months. This draft was duly indorsed and delivered to the plaintiff. The office could not be found and the draft was not paid, whereupon Fajans indorsed and delivered it to the plaintiff who sued to recover $51,400, with interest from March 18, 1920, alleging, as upon the first cause of action, that rubles were worth 51.4 cents in United States currency. On the second cause of action the court directed a verdict for the defendant on the ground that no proof had been offered of the value of rubles in 1927.

It appeared that the plaintiff was a citizen of the United States. The citizenship of Fajans was neither alleged nor proved.

█ Various defenses to each cause of action were raised, but the principal question was whether any proof was made of the value of the rubles in United States currency. Where a debt is due in a foreign country payable in the currency of that country, and suit is brought on it in the United States, the Supreme Court has held the plaintiff should recover what that currency is worth in this country on the day of judgment. Justice Holmes, who laid down the foregoing rule in Deutsche Bank v. Humphrey, 272 U. S. 517, 47 S. Ct. 166, 71 L. Ed. 383, said that the date of judgment, and not the date of the breach, was the proper time for figuring the rate of exchange because "a suit in this country is based upon an obligation existing under the foreign law at the time when the suit is brought, and the obligation is not enlarged by the fact that the creditor happens to be able to catch his debtor here."

It is therefore necessary to determine the extent of the obligation of the defendant in Russia. The difficulty with the plaintiff's case is that he failed to establish this and neglected to show that the rubles which the defendant was bound to pay had any value in United States currency at the date of judgment. It is argued that he was precluded from making such proof because the court struck out testimony of his witness Bolotovsky through whom he attempted to show the value of the ruble. Indeed, the exception which is most relied on was directed to the elimination of Bolotovsky's testimony. But this exception cannot avail, for, if we take the Bolotovsky testimony at its face value, it does not establish that the rubles which the defendant neglected to pay were worth anything at the date of judgment. Bolotovsky testified that Romanoff rubles had then practically disappeared, and that Denikin rubles and Kerensky rubles had become worthless. To be sure he said that, by decrees of the Soviet government in 1922 and 1924, a gold standard was established and that the ruble of the New Soviet currency was worth 53 cents at the time when he testified. But the text of these decrees was not proved, and no attempt was made to show whether they wiped out the preexistent rubles as legal tender or established any ratio of exchange for the old currency. We are asked to hold that obligations originally payable in rubles which had disappeared or become worthless should be liquidated in new Soviet rubles worth 53 cents.

In Thorington v. Smith, 8 Wall. 1, 19 L. Ed. 361, where a resident of the Confederate States agreed to pay another resident of those states $10,000 for a purchase of land, the Supreme Court held that the debt was to be liquidated in Confederate notes rather than in lawful money of the United States and that the plaintiff was entitled to recover in money of the United States the value of the Confederate money contracted to be paid. The decision in Effinger v. Kenney, 115 U. S. 566, 6 S. Ct. 179, 29 L. Ed. 495, was to the same effect.

It is perfectly true that an obligation payable "in terms of the currency of a country takes the risk of currency fluctuations and whether creditor or debtor profits by the change the law takes no account of it." Deutsche Bank v. Humphrey, 272 U. S. at page 519, 47 S. Ct. 166, 167, 71 L. Ed. 383. See, also, Legal Tender Cases, 12 Wall. 457, 20 L. Ed. 287; Richard v. American Union Bank, 241 N. Y. at page 167, 149 N. E. 338, 43 A. L. R. 512; Matter of James, 248 N. Y. at page 6, 161 N. E. 201. But the question here is whether the rubles which the defend-

ant agreed to pay were the same currency that the Soviet decrees of 1922 and 1924 established as governmental currency or had anything in common with the latter except the name. There is no proof of equivalence between the Soviet ruble which Bolotovsky said was worth 53 cents and the earlier Romanoff, Denikin, or Kerensky rubles. Indeed, the only testimony seems to indicate that the old rubles had no such equivalence, for they were said to have disappeared or to have become worthless. There was no proof that the Soviet decrees required debtors to pay obligations existing prior to their enactment in the new currency. We think that proof of the value of the rubles which the plaintiff sought to recover upon either the first or second cause of action was wholly lacking.

▌ Moreover, if, as the plaintiff once contended at the trial, the indebtedness of the bank might be liquidated either in Romanoff, Denikin, Kerensky, or Soviet rubles, the debtor had the privilege of paying in currency of the least value. Restatement of the Law of Contracts by American Law Institute, § 335; Williston on Contracts, § 1407; Matter of People (Russian Reinsurance Co.) 255 N. Y. at page 423, 175 N. E. 114. The old rubles had no, or certainly no proved, value at the time of the trial. Under the charge, the jury evidently found that the rubles which the bank contracted to pay were worthless when the suit was brought on August 24, 1927. This date, rather than the date of judgment, the court inadvertently adopted as the time for fixing the value of rubles in United States currency, but it was admitted at the argument before us that values had not changed between the date mistakenly adopted and the date of judgment. We can discover no proof that the rubles which the bank had agreed to pay had any value at either date, and we accordingly hold that on the merits the defendant was entitled to the direction of a verdict on the first cause of action. Other considerations affect the second cause of action which we shall discuss hereafter.

The plaintiff greatly relies on the recent decision of the New York Court of Appeals in Matter of People (First Russian Ins. Co.) 255 N. Y. 428, 175 N. E. 118, 119. There the holder of a policy in a Russian insurance company, who was entitled to the payment of 10,000 rubles in June, 1923, was allowed to recover at the rate of 51½ cents per ruble. Judge Cardozo interpreted the record as establishing that in June, 1923, "the Russian ruble was again on a gold basis, and that, where token rubles were paid in satisfaction of a debt, the number would have to be increased to the extent necessary to make the payment equivalent to one in gold." In other words, he in effect treated the obligation as calling for payment in gold and requiring liquidation in Soviet rubles of the new gold standard. But he most carefully added: "We do not attempt to say to what extent a different record, exhibiting in a different light the history of the ruble, would exact a different conclusion."

In the case at bar the evidence goes no farther than to indicate that a gold Soviet ruble was of the same value as an Imperial gold ruble coin. There is no proof that the defendant bank was bound to pay its obligations in gold. The old currency in which the drafts were originally payable had become worthless. When the Soviet government established a new currency, it is not shown to have provided by its decrees that old obligations were to be payable in the new currency, ruble for ruble. Indeed, that such was the meaning or effect of the decrees seems inherently unlikely. The plaintiff should have produced the decrees and proved their contracts, if it sought to establish that the claims having a value, nominal at the time, were made payable in a new currency worth 53 cents per ruble. It had the burden of proving the value of the rubles in United States currency at the date of judgment. That burden it has not sustained.

For the foregoing reasons the judgment as to the first cause of action is right.

▌ The judgment upon the second cause of action was rendered without jurisdiction. The lack of jurisdiction was not mentioned in the briefs filed for argument or upon the argument, but has since been called to our attention and discussed in supplemental memoranda. Affidavits submitted with the memoranda are no part of the record and will not be filed, but it may be added that, if they were open to consideration, they could not possibly affect the result of the decision.

The District Court had no jurisdiction over the second cause of action because of the provisions of the statute affecting suits based on diverse citizenship. After conferring jurisdiction where the matter in controversy exceeds, exclusive of interest and costs, $3,000, and is between citizens of a state and foreign states, citizens, and subjects, the act goes on to provide that: "No district court shall have

cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made. * * * " Title 28, U. S. C., § 41 (28 USCA § 41).

There is no allegation or proof of the citizenship of Fajans in whose favor the draft for 100,000 rubles was made, so that the suit upon the draft could not have been prosecuted by Fajans against the defendant, a Russian corporation. Therefore the plaintiff, an American citizen, could only sue in the District Court in case the draft is to be regarded as (1) a "foreign bills of exchange," or (2) as "payable to bearer and * * * made by any corporation." Turner, Administrator of Stanley, v. Bank of North America, 4 Dall. 8, 1 L. Ed. 718; Sheldon v. Sill, 8 How. 441, 12 L. Ed. 1147; New Orleans v. Quinlan, 173 U. S. 191, 19 S. Ct. 329, 43 L. Ed. 664.

■ The draft in question was not a "foreign bill of exchange," for it was not drawn in one country upon a person in another. This was Blackstone's definition of a foreign bill of exchange which was adopted by the Supreme Court in Buckner v. Finley, 2 Pet. 586, 7 L. Ed. 528, and employed to justify its decision that a bill drawn in Maryland upon a drawee in New Orleans was "a foreign bill" within the exception of the statute. If we were to treat bills drawn in another state upon persons in that state as foreign bills of exchange, we should open the United States courts to any litigant who chose the simple expedient of assigning his bill of exchange to a citizen of a state other than that in which it was drawn. It seems clear that the draft for 100,-000 rubles drawn by the defendant in Russia, upon its branch there, was not a foreign bill of exchange within the meaning of the statute.

■ Nor can the draft be thought to have been made by a corporation and "payable to bearer." It was made "to the order of * * * Fajans," and not "to bearer." The authorities are clear that such an instrument is not within the terms of the statute. New Orleans v. Benjamin, 153 U. S. 411, at page 432, 14 S. Ct. 905, 38 L. Ed. 764; Thomson v. Town of Elton (C. C.) 100 F. 145; Rollins v. Chaffee County (C. C.) 34 F. 91; State

Nat. Bank of Denison v. Eureka Springs Water Co. (C. C.) 174 F. 827.

The remaining questions are whether the second cause of action should be retained because it is coupled with the first over which there is jurisdiction, or whether both should be dismissed for lack of jurisdiction of the suit as a whole, or whether the second cause of action should be remanded to the state court and the judgment so far as it relates to the first should be affirmed.

■ The plaintiff argues that, because the first cause of action was one over which the court had jurisdiction, both causes of action should be held in the District Court under the "separable controversy" section of the United States statutes. Title 28, U. S. C., § 71 (28 USCA § 71). But the "separable controversy" section does not apply where, as here, the removing defendant was an alien. The above section only covers cases where the controversy is wholly "between citizens of different states." King v. Cornell, 106 U. S. 395, 1 S. Ct. 312, 27 L. Ed. 60; Merchants' Cotton Press & Storage Co. v. Ins. Co. of North America, 151 U. S. at page 386, 14 S. Ct. 367, 38 L. Ed. 195; Laden v. Meek (C. C. A.) 130 F. 877; Bailey v. Texas Co. (C. C. A.) 47 F. (2d) 153. But, in addition to this fatal objection, the controversy here was not "separable." On the contrary, there were joined in the complaint two entirely disconnected causes of action having neither a common subject-matter nor any other relation except that the plaintiffs and defendants were the same and the causes of action were, and under the practice might be, united in the same declaration. While the causes of action were in every sense "separate," there was no "separable controversy" within the meaning of the statute. A "separable controversy" does not arise from a joinder of numerous unrelated causes of action in order to eliminate many trials. Pacific Railroad Cases, 115 U. S. at page 23, 5 S. Ct. 1113, 29 L. Ed. 319; Mississippi Mills v. Cohn, 150 U. S. 202, 14 S. Ct. 75, 37 L. Ed. 1052; Stewart v. Nebraska Tire & Rubber Co. (C. C. A.) 39 F.(2d) 309; Drovers' Deposit Nat. Bank v. Tichenor (D. C.) 202 F. 1013; Tullar & Tullar v. Illinois Cent. R. Co. (D. C.) 213 F. 280; Manufacturers' Commercial Co. v. Brown Alaska Co. (C. C.) 148 F. 308; Deepwater R. Co. v. Western Pocahontas Coal & Lumber Co. (C. C.) 152 F. at page 830. In such a situation the entire suit should not have been removed to the United States court, as is done where a "separable controversy" exists (Barney v.

Latham, 103 U. S. 205, 26 L. Ed. 514), but only the cause of action over which jurisdiction by reason of diversity of citizenship might be exercised. This was the exact practice which we approved in Young v. Southern Pacific Co. (C. C. A.) 15 F.(2d) 280. This is because the Removal·Act allows removal only of suits of which the District Courts are given original jurisdiction. Title 28, U. S. C., § 71 (28 USCA § 71).

The second cause of action is in every fundamental sense a separate suit, and should be remanded to the state court. Pacific Railroad Removal Cases, 115 U. S. at page 23, 5 S. Ct. 1113, 29 L. Ed. 319; Young v. Southern Pac. Co. (C. C. A.) 15 F.(2d) 280; Lucania Societa, etc., v. U. S. Shipping Board, etc. (D. C.) 15 F.(2d) 568; Stewart v. Nebraska Tire & Rubber Co. (C. C. A.) 39 F. (2d) 309; State of Idaho v. American Surety Co. (D. C.) 218 F. 678.

It is true that in Tullar & Tullar v. Illinois Cent. Ry. Co., 213 F.·280, the whole suit was remanded, though the District Court had jurisdiction of one of the entirely separate causes of action, and in Sharkey v. Port Blakely Mill Co. (C. C.) 92 F. 425, and Hoge v. Canton Ins. Office (C. C.) 103 F. 513, Judge Hanford retained both causes of action when the circumstances were similar. But these three cases run counter to our own decision in Young v. Southern Pac. Co., supra, which cited with approval that of Judge Dietrich in State of Idaho v. American Surety Co., supra, as well as Pacific Railroad Removal Cases and Stewart v. Nebraska Tire & Rubber Co., supra.

█ As a further ground for retaining both causes of action, the plaintiff says that it does not lie in the mouth of the defendant, who removed the suit, to object to jurisdiction. But jurisdiction cannot be conferred by consent, and where the case which has been removed was one over which a federal court could never have had jurisdiction, it must be remanded, and the suggestion for remand may come from the removing party. Mansfield, C. & L. M.·Railway Co. v. Swan, 111 U. S. 379, 4 S. Ct. 510, 28 L. Ed. 462; Torrence v. Shedd, 144 U. S. 527, 12 S. Ct. 726, 36 L. Ed. 528; Mexican National Railroad v. Davidson, 157 U. S. 201, 15 S. Ct. 563, 39 L. Ed. 672; Gainesville v. Brown-Crummer Co., 277 U. S. 59, 48 S. Ct. 454, 72 L. Ed. 781.

For the foregoing reasons, the judgment so far as it relates to the first cause of action is affirmed, but, so far as it relates to the second cause of action, is reversed, with direction to the District Court to remand such second cause of action to the Supreme Court of the state of New York.