In the Matter of the Accounting of BANKERS TRUST COMPANY, as Executor of MICHAEL HECK, Deceased.

Surrogate's Court, New York County, July 10, 1952.

*Webster Sandford* for executor, petitioner.

*Anna H. Isenschmid* for Hubert J. Heck and others, respondents.

*Irving H. Saypol, United States Attorney for the Southern District of New York (Lawrence G. Greene of counsel), Harold I. Baynton* and *Edith Lowenstein* for J. Howard McGrath, Attorney General of the United States, as successor to the Alien Property Custodian, respondent.

FRANKENTHALER, S. The testator directed that his estate be divided into six equal parts with one share payable to each of his five brothers and his sister. He provided in article Fourth of his will that " any indebtedness owing to me at the time of my death by any legatee or devisee hereunder shall be applied against his or her share for the purposes of computing the amount to which said legatee is entitled.'' Two German legatees whose shares have been vested by the Alien Property Custodian were indebted to the testator at the time of his death, his brother Johann in the sum of 30,000 goldmarks evidenced by a bond and mortgage dated August 31, 1926, and his brother Stephen in the sum of 5,653 goldmarks evidenced by a promissory note dated January 3, 1935, bearing interest at the rate of 4%.

The amount due on the mortgage was originally disputed by the obligor who presented a claim against the estate for 2,400 marks. Efforts were made to compromise the various claims but the commencement of the war in 1939 put a halt to them.

In the present accounting proceeding the executor proposes to set off the amount of the debts against the legacies payable to the debtors pursuant to clause Fourth of the will. In order to convert the debt of goldmarks into dollars, the executor has applied the rate of exchange applicable at the date of decedent's death (October, 1938). The Attorney General, representing the debtor legatees, does not question the power of the executor to set off these debts against the legacies, but asserts that the correct rate of exchange is that presently existent.

The rate of exchange for goldmarks in October, 1938, was 40.105 cents. At this figure the mortgage obligation is $12,031.50, exclusive of interest, and the promissory note is $2,267.14, exclusive of interest. According to the pleadings, the current rate

of exchange for Deutsche marks (ten goldmarks equal one Deutsche mark) is approximately twenty-four cents. At this rate the mortgage obligation is $720 and the promissory note is $121.51.

The estate has a value of $30,000, consisting of $15,500 in United States assets and $14,500 representing the face amount of the obligations valued at the rate of exchange prevailing at the date of death. Thus, if the debts are calculated at the rate existent in October, 1938, the legacies of the debtors would be wiped out; if they are computed at the present rate, the debtors will share in the American assets.

The purpose of clause " Fourth " was to achieve equality among testator's brothers and sister. As two of the brothers had received substantial sums from decedent before his death, he directed that such sums should be taken into consideration in the proposed division of his estate. If the debts are converted at the present rate of exchange, the setoff would be very small in comparison with the amount actually received as the debtors will have received marks then valued at $12,031.50 and $2,267.14 and would now be charged with marks valued at $720 and $121.51. Moreover, if the debtors had paid the indebtedness when originally demanded by the executor in 1939, the estate would have received close to $15,000 in American currency. As a result of their failure to do so, the value of the estate has decreased almost 50%, to the detriment of all interested. It would be grossly inequitable to permit these legatees to profit from their derelictions by authorizing the offset of the depreciated value of the mark.

Clause Fourth refers to " any indebtedness owing to me at the time of my death ". In *Dickerson* v. *Stokes* (4 Dem. 219, 222) the court said of similar language: " This means  *  *  * the amount due [decedent] on the day of his death." As the testator referred to the date of death, the exchange rate as of that date would seem applicable. It is the usual rule in this State that the right of an executor to set off debts owing by legatees is fixed at the time of death; events occurring subsequent to that date are deemed irrelevant. (*Matter of Bogart*, 28 Hun 466; *Matter of Seligman*, N. Y. L. J., Jan. 28, 1946, p. 369, col. 3; *Matter of Sawin*, 173 Misc. 428; *Matter of Hahn*, 163 Misc. 70; cf. *Dickerson* v. *Stokes, supra.*)

There is also applicable to the problem here presented the rule stated in *Hoppe* v. *Russo-Asiatic Bank* (235 N. Y. 37, 39): " In an action properly brought in the courts of this state by a citizen or an alien to recover damages, liquidated or unliqui-

dated, for breach of contract  *  *  *, where primarily the plaintiff is entitled to recover a sum expressed in foreign money, in determining the amount of the judgment expressed in our currency the rate of exchange prevailing at the date of the breach of contract  *  *  *  is under ordinary circumstances to be applied " (See, also, *Parker* v. *Hoppe,* 257 N. Y. 333, reargument denied, 258 N. Y. 365; *Matter of People* [*First Russian Ins. Co.*], 255 N. Y. 428; *Sokoloff* v. *National City Bank,* 250 N. Y. 69, 81–82; *Kantor* v. *Aristo Hosiery Co.,* 222 App. Div. 502, affd. 248 N. Y. 630; *Richard* v. *American Union Bank,* 241 N. Y. 163, 167, 168, 173; 5 Williston on Contracts [Rev. ed.], § 1410A, and Restatement, Conflict of Laws, N. Y. Annot., § 424). At the date of testator's death, both obligations were due and unpaid. The failure of the debtors to comply with the executor's request for payment constituted a breach at that time. This conclusion also results from the direction in clause Fourth that " any indebtedness owing to me at the time of my death " should be charged against the legatees' interests. Hence, in accordance with the principles above stated, the rate of exchange at the date of death is controlling. Although the Appellate Division of this department has indicated that the rule of the *Hoppe* case may in certain circumstances be inapplicable (see *Matter of United Shellac Corp.* [*Jordan Ltd.*], 277 App. Div. 147, 152–153; *Hughes Tool Co.* v. *United Artists Corp.,* 279 App. Div. 417), there are no factors in the present instance which persuade the court to depart from the normal rule. The equities of this case demand that the legatee-debtors be charged, so far as is possible, with the amount which they actually received so that testator's contemplated equality may be effectuated.

In support of his contention, the Attorney General also relies upon the doctrine enunciated in *Matter of Lendle* (250 N. Y. 502) to the effect that legacies expressed in terms of foreign currencies (which are to be regarded as commodities), are payable in American dollars at the rate of exchange existent at the date of payment. This rule is inoperative in the instant case. The testamentary direction to set off outstanding debts is not a legacy expressed in terms of a foreign currency, nor can such clause be deemed a direction to deliver a " commodity ". The equitable basis of the *Lendle* decision furnishes no ground on which the debtor legatees may be benefited to the detriment of innocent parties.

Accordingly, the court holds that the rate of exchange for goldmarks at the date of testator's death controls the conver-

sion of the debts expressed in German currency into American dollars (*Matter of Vail*, N. Y. L. J., Feb. 27, 1950, p. 707, col. 4). The executor's request to abandon the amount of the debts in excess of the sums charged against the legacies is granted as is the request to abandon as worthless securities listed in Schedule H of the second supplemental account.

As the time for filing objections has expired, the claim of Jean and Martha Hoube is dismissed and the executor is authorized to sell the jewelry referred to in the original petition.

A legatee, Sebastian Heck, whose interest was vested by the Alien Property Custodian in 1944, died in 1945 and his heirs are the other five legatees. The supplemental petition proposes distribution of the share of this legatee to his heirs and the Attorney General has interposed objection thereto. The objection is sustained and the share of Sebastian Heck will be paid to the Attorney General. By virtue of a vesting order the Attorney General, as successor to the Alien Property Custodian, " succeeds to all the rights in the property to which the enemy is entitled as completely as if by conveyance, transfer or assignment ". (*Commercial Trust Co.* v. *Miller,* 262 U. S. 51, 56; *Cummings* v. *Deutsch Bank,* 300 U. S. 115.) This has the effect of completely divesting the alien of all interest in the estate; any purported transfer whether by will or otherwise would be ineffective as the alien no longer has an interest to transfer. The remedy of the distributees is to proceed under the proper provisions of the Trading With the Enemy Act (U. S. Code, tit. 50, Appendix, §§ 9, 32, subd. [a]; *Matter of Dieudonne,* 186 Misc. 642, 646; *Matter of Schluechterer,* 203 Misc. 578).

The fee and disbursements of the attorneys for the foreign distributees will be fixed and allowed upon the settlement of the decree herein.

Submit decree on notice settling the account accordingly.