**COMPETEX, S.A. (in liquidation), Plaintiff, Judgment Creditor,**

v.

**Ronald LABOW, Defendant, Judgment Debtor.**

**No. 81 Civ. 2550 (JES).**

United States District Court, S.D. New York.

July 22, 1985.

Orans, Elsen & Lupert, New York City, for plaintiff, judgment creditor; Sheldon H. Elsen, Gary H. Greenberg, Steven M. Gold, New York City, of counsel.

Olshan Grundman & Frome, New York City, for defendant judgment debtor; David Parker, David M. Levy, New York City, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge.

On March 16, 1981, plaintiff Competex obtained a final judgment in England, requiring defendant LaBow to pay plaintiff 187,929.82 English pounds. Defendant never paid that judgment. As a consequence, on April 28, 1981, plaintiff brought a diversity action in the United States District Court for the Southern District of New York to enforce the English judgment. At the bench trial of this action held on October 4–5, 1983, defendant made numerous arguments before Judge Werker as to why the English judgment should not be enforced.

Judge Werker rejected all of these arguments and converted the English judgment "to United States dollars at the exchange rate prevailing on March 16, 1981," the date of the final English judgment. *See Competex, S.A. v. LaBow*, No. 81 Civ. 2550 (HFW), slip op. at 11 (S.D.N.Y. October 17, 1983). This sum amounted to $413,445.60, plus interest and costs. *See id.*[1] In so doing, Judge Werker followed New York law, which applies the breach-day rule. *Id.* at 10. Prior to the entry of this United States judgment, defendant did not tender an amount sufficient to satisfy the English judgment in pounds. LaBow's appeal to the Second Circuit was dismissed in March of 1984.

On July 19, 1984, plaintiff sought provisional remedies under New York law to enforce the United States judgment entered by Judge Werker, which was filed on February 10, 1984.[2] In resisting plaintiff's

---

[1] In a subsequent memorandum decision dated January 20, 1984, Judge Werker granted the Rule 56(g) motion of plaintiff Competex, and awarded plaintiff legal fees and expenses in the amount of $66,349.48.

[2] On December 10, 1984, LaBow paid 266,448.13 English pounds to Competex, which represented the sum of the 1981 English judgment plus interest. Competex accepted such payment with an express reservation of its right to pursue remedies for the balance of the judgment entered by Judge Werker, less the U.S. dollar equivalent of LaBow's December 10, 1984 payment. LaBow also paid $71,406.68, a sum representing Judge Werker's award of attorney's fees and expenses, plus interest, in escrow to

Competex's attorneys pending further Order(s) by this Court. Following oral argument on May 24, 1985, the Court ordered that these escrow funds, plus interest, be released to plaintiff for disbursement pursuant to Judge Werker's memorandum decision and Order of January 20, 1984.

On July 19, 1984, counsel for plaintiff moved for: (1) an Order pursuant to CPLR §§ 5205 and 5226 compelling LaBow to make specified installment payments to Competex; and (2) "an [O]rder pursuant to CPLR § 5231 compelling [LaBow's employer] Neuberger and Berman to withhold ten per cent of LaBow's salary to satisfy [first] a pending income execution and [then] Competex's income execution...." *See* Def.

application for provisional remedies, La-Bow contended that he was entitled, as a matter of law, to satisfy the United States judgment by the payment of the English judgment in pounds. In so doing, LaBow relied upon *In re James*, 248 N.Y.1, 161 N.E. 201 (1928).

However, the *James* case does not support defendant's argument. In that case, the facts presented were the converse of the situation in the case at bar. The plaintiffs in *James* had first obtained a United States judgment and then, when executions upon a New York "Surrogate's Court" decree were returned unsatisfied in the United States, sought the enforcement of that judgment by means of a proceeding instituted in France. *See id.* at 4, 161 N.E. 201. After a French judgment had been obtained in francs and paid by the defendant executrix, the issue presented to the New York State Court of Appeals was whether or not the defendant had satisfied her obligation under the American decree by the payment of the French judgment in francs. *Id.*

The court in *James* held, notwithstanding the depreciation of the franc in its relationship to the dollar since the date of the French judgment, that the French judgment created an obligation payable in francs. *Id.* at 4–6, 161 N.E. 201. Thus, the judgment creditors were obliged to accept payment in francs in satisfaction of the French judgment. The language employed by the *James* court is especially applicable to this case. The court stated:

> [The French judgment] directed execution of the American judgment by the payment of 2,303,248.59 francs and not otherwise. The debtor has obeyed that command and has handed the last centime to her creditors. If the franc had risen to twice its value instead of shrunk to half she would have been bound by the same inexorable decree. She was obliged to pay that certain number of francs without regard to their value. After the translation of the judgment [from dollars into francs], her liability was in francs alone.[3]

*Id.* at 5–6, 161 N.E. 201.

 The *James* case, which is part of the substantive law of New York which must be applied in this diversity action,[4] thus supports plaintiff's contention that the United States judgment must be paid in dollars. If a plaintiff can be forced to accept French francs in satisfaction of a French judgment which had converted an American judgment from dollars into francs,[5] it follows that a plaintiff may properly insist on being paid in United States dollars when an English judgment has been converted from pounds into dollars.

 In this case, defendant argues that, under *James*, a defendant judgment debtor has the option, depending upon currency

---

Notice of Motion at 1. At a Pre-Trial Conference held on June 21, 1985, the parties agreed, in lieu of a hearing and decision by the Court on these issues, to submit a proposed Order which, in accordance with the Court's oral rulings of June 21, 1985, would set out a payment format.

Plaintiff's motion was first heard by this Court in Part I on August 3, 1984. On August 1, 1984, defendant filed a memorandum of law ("Def. August 1 Memo") in opposition to plaintiff's motion, in which defendant also "respectfully requested that this Court clarify the judgment [by Judge Werker], pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, to make explicit Mr. LaBow's right to satisfy it by payment in full of the original, underlying English judgment plus this Court's award of fees and disbursements." *See* Def. August 1 Memo at 3.

3. Indeed, as this language reflects, *James* may well stand for the proposition that any liability in dollars was extinguished when the French judgment was obtained, a view with which the Court does not necessarily concur.

4. Defendant LaBow has urged that this Court accept his contentions that "the *James* case is controlling authority on this motion," that "[t]he *James* case is directly applicable here," and that "the majority decision is still good law." *See* Def.Supp. Memo at 15–16 (filed January 4, 1985). This Court agrees with defendant in this regard, but disagrees with defendant's analysis of the proper application of *James* to this case.

5. The French *exequatur* proceeding was recognized in *James* "as nothing more than an execution of a judgment rendered in a foreign jurisdiction." *See James, supra*, 248 N.Y. at 4–5, 161 N.E. 201.

fluctuations, to either pay the English judgment in pounds or the United States judgment in dollars. However, that analysis flatly contradicts the court's reasoning in *James,* which clearly reflects the view that, in enforcing judgments, courts should, as a matter of policy, be indifferent to currency fluctuations. *See id.* at 6, 161 N.E. 201 (and cases cited therein).

Defendant also relies upon numerous cases which hold that, where an obligation is payable in a foreign currency, a defendant is entitled to satisfy that obligation in that currency. *See, e.g., Transamerica General Corp. v. Zunino,* 82 N.Y.S.2d 595 (Sup.Ct.1948). The Court does not dispute the soundness of that proposition, which, if anything, undermines defendant's argument. A United States judgment is an obligation payable *in dollars* and therefore is satisfiable only *in dollars.* While it is true that the English judgment which formed the underlying basis for the United States judgment could have been satisfied in pounds, it does not follow that a United States judgment payable in dollars can be similarly satisfied.

Nor is this result unfair to defendant. Prior to the entry of the United States judgment, defendant had the option of satisfying the English judgment by paying it in pounds. He chose not to do that, but rather to litigate whether or not that English judgment debt should be incorporated in a United States judgment. He had a full day in court on that issue and lost. Having failed to take advantage of the opportunity to abate the United States action by paying the English judgment in pounds, he cannot now complain of being required to satisfy the United States judgment in dollars.

 The defendant makes much of the fact that the English judgment did not merge into the United States judgment. Even assuming, as the Court must, that a United States court, in entering a United States judgment, does not have the power to affect the continuing validity of the English judgment, it is equally true that the satisfaction of the English judgment does not render unenforceable an obligation imposed by and existing under the laws of the United States.

Plaintiff relies heavily on the ALI's draft, dated April 12, 1985, of a proposed section 823 of the new Restatement of Foreign Relations Law of the United States, which generally reflects, as a matter of policy, that a defendant debtor should not profit by his failure to timely pay his debt. *See* Exhibit to Letter of Sheldon H. Elsen, dated May 14, 1985. However, in a diversity case, the Court is not free to disregard New York law and to follow the Restatement view, in the absence of some indication that the courts of New York would not currently adhere to the *James* case. *See Vishipco Line v. Chase Manhattan Bank, N.A.,* 660 F.2d 854, 865 & n. 7 (2d Cir.1981), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982); *cf. Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[6]

In any event, the result reached here, although it flows from an application of the *James* case, and not the Restatement itself, is not inconsistent with the policy expressed in the Restatement.

## CONCLUSION

Defendant's motion for relief from the Judgment and Orders of Judge Werker, brought pursuant to Fed.R.Civ.P. 60(b), is denied. Plaintiff's motions to compel installment payments and withholding of salary from defendant are granted pursuant to the terms of a separate Order.

It is SO ORDERED.

---

**6.** The Court is not persuaded by plaintiff's contention that the *James* case is not properly reflective of New York law. Nor is that case unsound in principle. In fact the Court agrees with the *James* court that the enforceability of a judgment in the currency in which it is payable should not depend upon whether a creditor or debtor benefits or loses as a result of currency exchange fluctuations. *See James, supra,* 248 N.Y. at 6, 161 N.E. 201.