Angela G. CAULFIELD, Plaintiff-Respondent,††

v.

Robert L. CAULFIELD, Defendant-Appellant.†

Court of Appeals

*No. 93–1067–FT. Submitted on briefs September 29, 1993.—Decided March 8, 1994.*

(Also reported in 515 N.W.2d 278.)

††Petition to cross review denied.
†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Law Office of Hiller & Frank, S.C.* by *Harvey Jay Goldstein* and *Felicia Styler Miller*, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Foley & Lardner* by *Robert A. Christensen* and *Brian P. Akers*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J. Robert L. Caulfield appeals from a judgment granted in favor of Angela G. Caulfield. Angela had sued Robert for judgment on a loan note executed during their marriage. At the time she filed suit on the note, divorce proceedings were pending

between Robert and Angela. Robert appeals, contending: (1) the trial court should have granted his motion to dismiss Angela's action on the note; and (2) the trial court erred when it granted Angela summary judgment on the note. Pursuant to this court's order dated May 20, 1993, this case was submitted to the court on the expedited appeals calendar. Upon review of the briefs and record, we conclude that the trial court's decision to deny Robert's motion to dismiss was correct. We conclude, however, that summary judgment was inappropriate because material facts raised by Robert's defense remain in dispute. We therefore affirm in part, reverse in part and remand with directions.

## I. BACKGROUND

Angela and Robert were married in December 1983. Prior to the marriage, they had entered a prenuptial agreement in an effort to retain the assets each brought to the marriage. That agreement was expanded and re-confirmed by Angela and Robert in 1986.

During the course of the marriage, Angela and Robert purchased a radio station and created a corporation to own the station assets. Robert received 46% of the stock in the corporation and Angela received 54% of the corporate stock. Because Angela invested a greater portion of her assets in the purchase, Robert executed a note to Angela in the amount of $584,000.

Angela filed for divorce from Robert on January 3, 1992. On November 19, 1992, Angela began a separate action for judgment on the $584,000 note. Shortly thereafter, Robert moved the trial court to dismiss the action on the note or, in the alternative, to consolidate the action with the pending divorce. In support of his motion, Robert contended that, pursuant to § 767.01,

STATS.,[1] the trial court in the divorce action was "faced with the task of resolving all of the financial issues between the parties" and, in doing so, it would necessarily "consider the note" which was the basis of the separate action commenced by Angela. He contended that both actions—the divorce and the lawsuit on the note—were "actions to enforce the notes." As such, he contended that § 802.06(2)(j), STATS., which provides that a party may file a motion to dismiss an action if there is "another action pending between the same parties for the same cause," indicated that dismissal was appropriate. He argued that his liability on the note would be resolved within the divorce action itself and, therefore, the action on the note was simply "another action between the same parties for the same cause."

The trial court disagreed with Robert's analysis and declined to dismiss the separate action on the note. The trial court reasoned that dissolution of a marriage is equitable in nature and that the issue of liability on the note was a legal issue that could be resolved in a separate action.

---

[1] Section 767.01(1), STATS., provides:

> The circuit courts have jurisdiction of all actions affecting the family and have authority to do all acts and things necessary and proper in such action and to carry their orders and judgments into execution as prescribed in this chapter. All actions affecting the family shall be commenced and conducted and the orders and judgments enforced according to these statutes in respect to actions in circuit court, as far as applicable, except as provided in this chapter.

Robert also argued that the mandates of § 767.02(1)(h), STATS., (property division is an action affecting the family) and § 767.255, STATS., (circuit court "shall divide the property of the parties and divest and transfer the title of any such property accordingly") precluded the separate action for liability on the note.

87

In support of this conclusion, the trial court stated that the reasoning of the court of appeals in *Stuart v. Stuart*, 140 Wis. 2d 455, 410 N.W.2d 632 (Ct. App. 1987), controlled its decision.[2] The trial court noted that this court held in *Stuart* that after the conclusion of a divorce action, a spouse was not precluded by principles of *res judicata* or collateral estoppel from pursuing a tort action for injuries suffered during the marriage from the ex-spouse's physical abuse. Although the trial court recognized that the issue in *Stuart* involved a post-divorce tort action, it reasoned that the issues raised in a contract action, like those in a tort action, are sufficiently different from an equitable action like divorce to maintain a separate action.

Angela then moved the trial court for summary judgment on her claim. Robert opposed summary judgment, arguing that he had been induced to enter the contractual relationship with Angela by fraud. He maintained that he signed the note at the instruction of Angela's attorney because he was told that the purpose of the note was to "obtain the maximum tax deduction" and to obtain "written evidence that [he] invested enough money into [the corporation] to justify issuing [him] 46% of the stock." He contended that "the purpose and intent" of the note had been misrepresented to him. He alleged that he had been told that the note would merely "evidence a disparity" in his and Angela's individual investments and would not "constitute evidence of indebtedness." He claimed he was told that he would not have to repay the loan.

The trial court granted Angela summary judgment. It reasoned that summary judgment was

---

[2] Our reasoning in *Stuart* that is relevant to this case was specifically adopted by the supreme court on review. *See Stuart v. Stuart*, 143 Wis. 2d 347, 352, 421 N.W.2d 505, 508 (1988).

appropriate because there was no genuine dispute as to any material fact. It stated that "the alleged promise not to enforce the note is not a material fact."

## II. DISCUSSION

*A. Motion to Dismiss*

Motions to dismiss are directed to the sound discretion of the trial court. *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273, 470 N.W.2d 859, 863 (1991). "A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* Robert argues that the trial court applied an incorrect standard of law when it held that, under *Stuart*, dismissal of the action on the note was not required. *See State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968) (misapplication or erroneous view of the law is an erroneous exercise of discretion).

While we recognize that *Stuart* is factually distinguishable from this case, we find the legal analysis persuasive and apply it here. The issue in *Stuart* was whether a divorce judgment barred a later action in tort by the wife against the husband for intentional torts allegedly committed by him during the marriage. *Stuart*, 140 Wis. 2d at 459, 410 N.W.2d at 635. The trial court dismissed the wife's tort action, concluding that it was barred by the doctrines of *res judicata*, collateral estoppel and waiver. *Id.* at 458, 410 N.W.2d at 634. This court reversed, reasoning, in part, that joinder of a tort action arising from actions during the marriage need not necessarily be joined in a subsequent divorce

action. *Id.* at 466, 410 N.W.2d at 637. Among other things, the court noted that requiring joinder of a tort claim with a divorce could force a spouse to surrender the constitutional right to a jury trial on the tort claim. *Id.* at 466, 410 N.W.2d at 638. We continued:

> Although joinder is permissible, the administration of justice is better served by keeping tort and divorce actions separate. Divorce actions will become unduly complicated if tort claims must be litigated in the same action. A divorce action is equitable in nature and involves a trial to the court. On the other hand, a trial of a tort claim is one at law and may involve . . . a request for a jury trial.

*Id.* at 466-67, 410 N.W.2d at 638 (citation omitted).

Although the instant case involves a contract action commenced during the pendency of the divorce, the same analysis obtains. Angela's action on contract was one at law, triable to the court or to a jury, unlike the divorce action which was equitable in character and to be tried only to the court. *See* § 767.12(1), STATS. Robert's contention—that Angela could not commence a separate legal action on the note outside the divorce—would force Angela to join a legal claim and an equitable claim, while depriving her of her right to try her legal claim to a jury. Nothing in Wisconsin law requires a claimant to relinquish the right to a jury trial on a legal claim. *See Stuart*, 140 Wis. 2d at 466, 410 N.W.2d at 638. The trial court did not erroneously exercise its discretion when it denied Robert's dismissal motion.[3]

---

[3] We also reject Robert's contention that *Gardner v. Gardner*, 175 Wis. 2d 420, 499 N.W.2d 266 (Ct. App. 1993), mandates a different result. In that case, Dianne Gardner, after divorce

## B. *Summary Judgment*

Summary judgment is appropriate to determine whether there are any disputed factual issues for trial and "to avoid trials where there is nothing to try." *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 470, 304 N.W.2d 752, 757 (1981). We use the same methodology as the trial court in determining whether summary judgment is appropriate. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). First, we examine the pleadings to determine whether they state a claim for relief. *Id.* If a claim is stated and the responsive pleadings join the issue, we then examine the evidentiary record to determine whether a genuine issue of material fact exists or whether a party is entitled to a judgment as a matter of law. *See* § 802.08(2), STATS.

As we have noted, Robert raised in his pleadings and affidavits the defense that he was induced by

---

proceedings had been commenced, filed a separate tort action against her husband for damage to marital property. The trial court dismissed the action and we affirmed. We held that Dianne could not maintain "a cause of action in tort related to the damage of marital property." *Id.* at 435, 499 N.W.2d at 272. We reasoned that § 766.15(1), STATS., (a spouse has a duty to "act in good faith with respect to the other spouse in matters involving marital property or other property") and § 766.70, STATS., (a spouse has the right to make a claim for breach of the duty established by § 766.15(1)) "encompass the common law action for intentional misrepresentation and any other breach of the duty of good faith" between spouses. *Id.* at 427, 499 N.W.2d at 269. *Gardner* is inapposite here because Angela's action on the note is simply a legal claim based on contract and does not involve any claim that Robert has violated the duty of good faith between spouses.

Angela's counsel's misrepresentations to enter the contract and that he would not have entered the contract absent those misrepresentations. Thus, he claims that he was fraudulently induced to enter the contract on which Angela sues.

Angela argues that Robert's claim of misrepresentation does not raise issues of material fact that preclude summary judgment. In support of that argument, she contends that, as a matter of law, Robert cannot attempt to contradict the terms of the note by asserting that he was promised that the note would not be enforced. In addition, she contends that Robert has not made any allegation that would raise an issue of material fact. She contends that, even assuming the truth of Robert's allegation regarding the alleged misrepresentation, Robert was not justified in relying on that misrepresentation.

■

We disagree with Angela's first contention that the parol evidence rule—which prohibits introduction of extrinsic evidence to contradict the express language of an unambiguous contract—prevents introduction of Robert's claim of misrepresentation. "A material misrepresentation of fact may render a contract void or voidable." *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 731, 456 N.W.2d 585, 588 (1990). "The parol evidence rule does not exclude evidence to show misrepresentation as a ground for avoidance of the contract." *Id.* Here, by claiming fraud in the inducement, Robert seeks to void the contract altogether.

■

We also reject Angela's contention that even assuming the truth of Robert's allegations regarding the misrepresentations, he was not justified in relying on them. "The elements of fraud are a false representa-

tion made with intent to defraud and reliance by the injured party on the misrepresentation." *Ritchie v. Clappier*, 109 Wis. 2d 399, 404, 326 N.W.2d 131, 134 (Ct. App. 1982). The reliance on the representation must be justifiable; negligent reliance is not justifiable. *Id.*

In support of her argument that Robert's claimed reliance on the alleged misrepresentation was not justifiable, Angela notes that Robert is a "relatively sophisticated businessman." She also contends that the note itself "appears on its face to have been intended to be enforced" because it is "comparatively lengthy, is secured, has substantial remedies for default, and varies the interest rate depending on the date of payment."

We note, however, that, in cases where claims of misrepresentation are made, the facts of the case are important to determine if reliance on the misrepresentation is justifiable. *Bank of Sun Prairie*, 155 Wis. 2d at 732-33, 456 N.W.2d at 589. Although the facts in *Bank of Sun Prairie* are distinguishable, we find the reasoning persuasive. In that case, Esser had signed a Guaranty on a note without reading the Guaranty, but claimed that she had done so only after the bank had misrepresented to her the terms of the Guaranty. *Id.* at 728, 456 N.W.2d at 587. Although the bank denied any misrepresentation to Esser regarding the terms of the note, it contended that, by failing to read the contract before signing it, Esser was negligent as a matter of law and barred from proceeding on her claim that the bank fraudulently induced her to sign the note. *Id.* at 732, 456 N.W.2d at 589. In support of this contention, the bank cited *Ritchie. Id.*

The supreme court rejected the bank's contention that *Ritchie* barred a claim of fraud in the inducement as a matter of law when the party making the claim has failed to read the contract. *Id.* at 732-33, 456 N.W.2d at 589. It reasoned that *Ritchie* simply stands for the proposition that, when fraud is pled, the facts of each case "must be considered, including the intelligence and experience of the misled individual and the relationship between the parties, to determine whether the individual acted reasonably when relying on the misrepresentation." *Id.* at 734, 456 N.W.2d at 589.

That analytical framework applies here also. As Robert notes, he alleged that he signed the note at the instruction of Angela's counsel because he was told that it would allow him and Angela to gain "some sort of tax benefit."[4] At the time he signed the note, he and Angela were husband and wife and, even assuming Robert's "relative sophistication" as a businessman, Robert's defense raises a question as to whether the spousal relationship itself may have affected his decision to enter the note. Thus, Robert has raised a question of material fact relating to the reasonableness of his reliance on the alleged misrepresentation.

---

[4] Seizing on this point, Angela argues that "the only inference which may be drawn from Robert's affidavit is that he believed that the note was part of a scheme to defraud the government of taxes." On that basis, she argues that Robert cannot maintain his action because a "party who gives a note as part of a scheme to mislead the government is estopped to deny the validity of the note." We reject Angela's argument because it is based on an inference drawn from statements in Robert's affidavits. Robert has denied that he had any belief that his signing the note was "part of a scheme to defraud the government." This raises a question of material fact which is inappropriate for resolution on summary judgment.

■

We are satisfied that Robert has raised genuine issues of material fact relative to the circumstances surrounding his entry into the loan contract. Summary judgment was therefore not appropriate. In this case, the trier of fact must determine if misrepresentations were, in fact, made. Once those findings are made, additional fact-finding may also be required as to whether, in this case, Robert justifiably relied on the alleged misrepresentations. Therefore, the judgment is affirmed in part, reversed in part and remanded to the trial court for further proceedings not inconsistent with this opinion.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.