Kevin J. FULLIN, M.D. and Ramanuja R. Manda, M.D., Plaintiffs,

v.

Carroll M. MARTIN, M.D., Lisa Jardas and James Splitek, Defendants,

and

Lisa E. Jardas, Third–Party Plaintiff,

v.

Fullin, Manda, Kraeger, Ltd., Third–Party Defendant,

and

Carroll M. Martin, M.D., Third–Party Plaintiff,

v.

Suzette Jaskie and Fullin, Manda, Kraeger, Ltd., Third–Party Defendants.

No. 97–C–897.

United States District Court, E.D. Wisconsin.

Jan. 27, 1999.

Franklyn M. Gimbel, Gimbel Reilly Guerin & Brown, Milwaukee, WI, Joseph F. Madrigrano, Madrigrano Zievers Ziello & Iaquinta, Kenosha, WI, for plaintiffs.

Carroll M. Martin, M.D., Robert J. Simandl, James E. Braza, Louis F. Raymond, Davis & Kuelthau, Milwaukee, WI, James Splitek, Donald M. Lieb, Wayne Van Ert, Otjen Van Ert Stangle Lieb & Weir, Milwaukee, WI, Lisa E. Jardas, John M. Wirth, Mallery & Zimmerman, Milwaukee, WI, for defendants.

Lisa E. Jardas, John M. Wirth, Mallery & Zimmerman, Milwaukee, WI, Carroll M. Martin, M.D., Robert J. Simandl, James E. Braza, Louis F. Raymond, Davis & Kuelthau, Milwaukee, WI, for third-party plaintiffs.

Suzette Jaskie and Fullin, Manda, Kraeger, Ltd., Franklyn M. Gimbel, Joseph F. Madrigrano, Madrigrano Zievers Ziello & Iaquinta, Kenosha, WI, for third-party defendants.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on motions for summary judgment filed by the various defendants herein. The matter was scheduled to go to trial beginning January 11, 1999, but the Court informed counsel that a criminal trial took precedence. However, the Court's review of the summary judgment motions and other pleadings reveals that a trial, at least on the state law claims, would be inappropriate. The Court reaches this conclusion, not for the reasons expressed by the defendants in their various motions, but because the Court lacks subject matter jurisdiction to hear the state law claims.

### I

The case stems from a dispute between three cardiologists. Dr. Carroll M. Martin ("Martin") incorporated his practice in 1985 under the name "Kenosha Cardiology Associates" ("KCA"). In 1986, Dr. Kevin Fullin ("Fullin") joined KCA as an employee, and two years later he became an equal shareholder with Martin in the corporation. In 1992, Dr. Ramanuja Manda ("Manda") joined KCA as an equal shareholder with Martin and Fullin. Martin, Fullin and Manda are citizens and residents of Wisconsin. In addition to the three doctors, KCA employed a full-time office administrator, Lisa Jardas ("Jardas"), and retained an outside accountant, James Splitek ("Splitek") of PPG Management Consultants, who are also citizens and residents of Wisconsin.

Trouble began when Fullin and Manda were informed by Martin and Splitek in late–1995 that KCA would have to borrow money in order to pay them their share of the

profits. Fullin and Manda claim the shortfall was due in large part to Martin's alleged practice of using corporate credit cards for personal expenditures, while directing Jardas and Splitek to code and allocate those charges as business expenses paid out of KCA's revenues. Fullin and Manda also claim that Martin directed Jardas, on several occasions and with Splitek's knowledge, to issue Martin reimbursement checks, or checks made out to "Cash," on KCA's corporate accounts, which Martin in turn used for personal purchases. In this way, Martin allegedly manipulated the finances of KCA so that he was paid more than Fullin and Manda, despite written agreements directing that they share in the profits equally. The dispute resulted in a Separation Agreement, whereby Martin, in exchange for certain severance and other payments, resigned from KCA. Accounting disputes continued post-separation, however, and the entire matter spilled into court.

State court, that is. On February 7, 1997, Fullin and Manda, in their personal capacities, sued Martin, Jardas and Splitek, alleging six state law causes of action: (1) Breach of contract/fiduciary duty; (2) conversion; (3) an accounting of KCA's records; (4) intentional misrepresentation; (5) violations of Wis.Stats. §§ 948.82 and 948.83; and (6) accounting malpractice. Fullin and Manda's complaint also sought punitive damages on these claims. Martin counterclaimed for breach of contract, defamation, and interference with prospective contract. Jardas counterclaimed against KCA for indemnification. Splitek filed no counterclaims. There being no diversity between the parties, and no federal claims asserted in the plaintiff's complaint, the matter remained in state court.

Five months later, on July 25, 1997, Fullin and Manda filed an amended complaint. The amended complaint added a seventh cause of action against Martin only. The claim was filed under the Employee's Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and was filed against Martin in his continuing capacity as trustee of KCA's pension and 401(k) plans. Fullin and Manda alleged generally that they are "owed benefits due to them pursuant to the terms of those plans" and that they "seek a declaration, clarification and enforcement of their rights under those plans, including but not limited to their right to future benefits...." (See, Amended Complaint at ¶¶ 50–52.) More recently, Fullin and Manda elaborated on the factual nature of this claim, charging that Martin "had mismanaged the practice's money purchase pension plan and the 401(k) plan by erroneously allocating investments, profits and losses and by making investments unilaterally without the consent of or consultation with the other shareholders." (Plaintiffs' Final Pretrial Report at 3–4.)

Based on this single federal cause of action, Martin removed the matter to federal court. (See, Notice of Removal filed August 22, 1997.) In his Notice, Martin stated that the amended complaint set forth "a new, separate and independent cause of action seeking recovery and relief under ERISA," and that the "separate and independent cause of action [was] against only Martin." (Id. at ¶¶ 3, 6.) Because the new ERISA claim was "separate and independent" from the state law claims, Martin relied principally upon 28 U.S.C. § 1441(c) as his basis for removal. The latter statute provides that an entire action may be removed to federal court whenever a "separate and independent" federal claim is joined with other claims not otherwise removable. Because he was relying upon section 1441(c), Martin claimed he need not obtain the consent of his co-defendants, pursuant to Thomas v. Shelton, 740 F.2d 478, 483 (7th Cir.1984). Alternatively, Martin relied, without elaboration, upon the standard removal provisions codified at 28 U.S.C. §§ 1441(a) & (b), and to this end he obtained the consent of his co-defendants. In any event, Fullin and Manda did not object to the removal.

The case proceeded through discovery, with various motions and disputes along the way, and then the defendants filed their summary judgment motions. The motions filed by Jardas and Splitek deal only with the state law claims asserted against them, as they are not parties to the ERISA claim. Martin's motion maintains that plaintiffs signed a release waiving all but the accounting and conversion claims, and argues that

the ERISA and other state law claims should be dismissed (at least as against Martin). The Court concludes, however, that it only has subject matter jurisdiction over the ERISA claim, and therefore can only issue a summary judgment decision concerning that claim. The state law claims, and the motions relating to the same, are remanded to state court.

The jurisdictional problem arises from the limits Article III places upon the federal question jurisdiction of this Court; specifically, the limits placed upon the Court's ability to hear state law claims which are joined with a federal claim falling within the Court's original jurisdiction. The Supreme Court of the United States interprets Article III as requiring any such state law claim to bear a certain logical and factual relationship to the federal claim. If there is no such relationship, the state law claims fall outside of the federal court's subject matter jurisdiction. This doctrine—previously referred to as the doctrine of *pendent jurisdiction* but now codified by Congress under the name *supplemental jurisdiction*[1]—leaves no room for the removal of "separate and independent" state law claims to federal court.

## II

█ The Court begins with the wording of 28 U.S.C. § 1441(c):

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c). The statute has been described as "bizarre" because the express reference to "separate and independent" claims implies that "the more unrelated a state claim is to a federal claim, the more likely it is that removal is appropriate." *Charles D. Bonanno Linen Service, Inc. v. McCarthy*, 708 F.2d 1, 9 (1st Cir.1983) (Breyer, J.). As indicated above, such a rule runs contrary to what has long been understood as the limit of a federal court's power to hear state law claims within the context of its federal question jurisdiction.

Historically, section 1441(c) and its predecessors applied primarily in cases of diversity jurisdiction.[2] Indeed, from 1866 until 1948, it applied only to diversity cases.[3] Initially, of course, this was explained by the fact that the federal question jurisdiction of federal courts was not created until 1875.[4] Even after the creation of federal question jurisdiction, however, the right to remove what was then referred to as a "separable controversy" was limited by statute to controversies "wholly between citizens of different States, ...."[5] And *separable* controversies were quite distinct from *separate* controversies. A *separable* controversy was one "logically embraced within the entire case and made an integral part of it otherwise than by mere

---

1. *See*, 28 U.S.C. § 1367.

2. *See*, *Bonanno*, 708 F.2d at 9 (acknowledging "the fact that § 1441(c) was written with diversity cases in mind.").

3. The first statute providing a right to remove part of a case from state court to federal court on the basis of a "separable controversy" was the Act of July 27, 1866, ch. 288, 14 Stat. 306. That Act allowed a non-resident defendant to remove any claims brought against it by a forum plaintiff so long as "there can be a final determination of the controversy, so far as it concerns him, without the presence of the other defendants...." Under the Act, any claims against non-diverse defendants remained in state court, effectively splitting the case into two suits proceeding in two distinct forums.

4. Federal question jurisdiction was enacted by the Act of March 3, 1875, ch. 137, § 1, 18 Stat. 470. Actually, the 1875 Act *re-enacted* federal question jurisdiction. In 1801, Congress enacted federal question jurisdiction, only to repeal it the following year. *See*, Act of Feb. 13, 1801, ch. 4, § 11, 2 Stat. 89, 92; *see also*, Act of Mar. 8, 1802, ch. 8, § 1, 2 Stat. 132. In any event, the 1866 Act, which was the original predecessor to section 1441(c), preceded the creation of federal question jurisdiction by nine years.

5. *See*, Act of March 3, 1875, ch. 137, § 2, 18 Stat. 470, 471. The 1875 Act, however, unlike the 1866 Act, allowed *an entire suit* to be removed to federal court whenever it contained a separable controversy between citizens of different states. The 1866 Act only allowed removal of the separable controversy.

joinder, but which could be disentangled, separated out, and fully adjudicated if it stood alone." Lewin, *The Federal Courts' Hospitable Back Door—Removal of "Separate and Independent" Non–Federal Causes of Action*, 66 Harv.L.Rev. 423, 428 (1953). A *separate* controversy was one "entirely disconnected" from the other claims in suit, "having neither a common subject-matter nor any other relation except that the plaintiffs and defendants were the same and the causes of action were, and under the practice might be, united in the same declaration." *Tillman v. Russo Asiatic Bank*, 51 F.2d 1023, 1027 (2nd Cir.1931). Where there was a *separable* controversy between two diverse litigants in state court, the predecessor to section 1441(c) allowed the entire lawsuit to be removed into federal court, including the claims involving non-diverse litigants. *Barney v. Latham*, 103 U.S. 205, 211–13, 26 L.Ed. 514 (1880). However, where there was only a *separate* controversy between two diverse litigants in state court, only the separate controversy could be removed to federal court, and the other claims between non-diverse litigants remained in state court. *Tillman*, 51 F.2d at 1027–28.[6]

In 1948, Congress revised and re-codified the laws relating to judicial procedure, and in the process substituted 28 U.S.C. § 1441(c) for section 71 of the old Judicial Code.[7] The new section 1441(c) allowed removal of an entire case "[w]henever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action,...."[8] Said language, unlike the predecessor statutes, did not expressly limit section 1441(c)'s reach to diversity claims, and thus authorized removal on the basis of a separate and independent *federal claim* as well as a separate and independent *diversity claim*. This development has been described as "unusual," given that Congress believed at the time that they were narrowing—not expanding—the scope of separable claim removal, and some suggest Congress did not even realize the new statute extended such removal to federal questions.[9]

"Although section 1441(c), unlike the old section 71, [was] not explicitly limited to diversity cases, its principal and maybe only application is to such cases." *Thomas v. Shelton*, 740 F.2d 478, 483 (7th Cir.1984) (Posner, C.J.).[10] Chief Judge Posner explains this seeming contradiction as follows: In diversity cases, the joinder of a non-diverse defendant with a diverse defendant precluded removal absent the intervention of 1441(c). *Id.* But in federal question cases, the joinder of a state claim with a federal claim *did not* preclude removal, regardless of section 1441(c). *Id.* That is, if the state law claim was related sufficiently to the federal claim, the entire case could be removed under the standard removal statute—sections 1441(a) & (b)—and the state law claim was cognizable under the federal court's pendent

---

6. Where a separable controversy existed, the entire suit could be removed although it contained issues which were wholly between citizens of the same state. If, however, the state action consisted of two unrelated controversies, only the controversy which was wholly between diverse citizens was removable, for then two suits were said to be involved. Lewin, 66 Harv.L.Rev. at 428.

7. Act of June 25, 1948, ch. 646, 62 Stat. 869, 938.

8. *Id.*

9. *See,* McFarland, 54 Ohio St.L.J. at 1080 ("The addition was unusual, because the Revision Committee and Congress believed they were restricting separate claim removal. This suggests Congress at that time did not even consider the applicability of section 1441(c) to federal question cases."). Professor McFarland's suggestion may be on the mark. "The 1948 Code has been

criticized as 'one of the worst pieces of draftsmanship in all history.'" Wasserman, *Rethinking Review of Remands: Proposed Amendments to the Federal Removal Statute*, 43 Emory L.J. 83, 103, fn. 86 (Winter, 1994) (quoting, Book Note, 36 Minn.L.Rev. 117, 118 (1951)). Indeed, an amendatory act passed the following year corrected 174 errors contained in the original revision. *Id.* However, because section 1441(c) was not addressed by the amendatory act, Congress either made the same mistake twice, or fully intended to extend separate claim removal to federal question cases.

10. *See also,* McFarland, 54 Ohio St.L.J. at 1076 ("Even though the statute encompassed both federal question and diversity cases, it had originally been designed in 1948 primarily for diversity cases. Of course, the great bulk of the decisions from 1948 to 1990 involved diversity cases.").

or supplemental jurisdiction. *Id.* If the state law claim was unrelated to the federal claim, then there were two cases—one state and one federal—and the federal case could be carved out of state court under the standard removal statute, as explained in *Tillman, supra. Id.* Thus, Judge Posner suggested that section 1441(c) serves only a very limited purpose in federal question cases:

> Maybe, though, the very purpose of section 1441(c) in federal-question cases is to allow removal of both a federal claim and an unrelated state claim—the two together constituting the "entire case" that is removable under section 1441(c) if a separate and independent (and therefore unrelated?) claim in the complaint is within the original jurisdiction of the federal district courts.

*Id.*

There is, however, a constitutional problem with using the statute in this way. To understand this problem, one must first consider the scope of federal question jurisdiction. Article III sets forth the federal question jurisdiction of the federal courts as follows:

> The judicial Power shall extend to all *Cases,* in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; . . . .

U.S.Constitution, Article III, § 2, cl. 1 (emphasis added). The jurisdictional touchstone is the existence of a "Case" which arises under the Constitution, Laws or Treaties of the United States. In cases involving both federal and state law claims, the requirement of a "case" is satisfied so long as the federal and state claims "derive from a common nucleus of operative fact . . . . such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding, . . . ." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). If they are not so relat-

ed, the federal and state claims comprise essentially two separate "cases," only one of which falls within the federal question jurisdiction of the federal courts. This is the well-known *Gibbs* test of pendent jurisdiction, and it is clear "that *Gibbs* delineated the constitutional limits of federal judicial power" in federal question cases.[11] *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 371, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978).

Contrast the definition of what is a "case" for federal question purposes with the definition of a "separate and independent claim" for purposes of section 1441(c). Section 1441(c) substituted the latter phrase for the prior requirement of a "separable controversy." According to the Supreme Court, Congress made this change in order "to limit removal from state courts." *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 9–10, 71 S.Ct. 534, 538, 95 L.Ed. 702 (1951). In other words, a "separable controversy" was a broader concept than a "separate and independent claim":

> A separable controversy is no longer an adequate ground for removal unless it also constitutes a separate and independent claim or cause of action. Compare *Barney v. Latham,* 103 U.S. 205, 212, 26 L.Ed. 514, with the revised § 1441. Congress has authorized removal now under § 1441(c) only when there is a separate and independent claim or cause of action. Of course, 'separate cause of action' restricts removal more than 'separable controversy.' In a suit covering multiple parties or issues based on a single claim, there may be only one cause of action and yet be separable controversies. The addition of the word 'independent' gives emphasis to congressional intention to require more complete disassociation between the federally cognizable proceedings and those cognizable

---

11. Although Congress codified the doctrine of pendent jurisdiction in 1990, the statute preserves and embodies the jurisdictional standards established in *Gibbs. See, MCI Telecommunications Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1102 (3rd Cir.1995); *see also, LaSorella v. Penrose St. Francis Healthcare System,* 818 F.Supp. 1413, 1415 (D.Colo.1993). Those standards re-

quire the following: (1) The federal claim must have substance sufficient to confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative facts; and (3) the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding. *Teleconcepts,* 71 F.3d at 1102.

only in state courts before allowing removal.

\* \* \* \* \* \*

Considering the previous history of 'separable controversy,' the broad meaning of 'cause of action,' and the congressional purpose in the revision resulting in 28 U.S.C. § 1441(c), 28 U.S.C.A. § 1441(c), we conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).

*Finn*, 341 U.S. at 11–12, 71 S.Ct. at 538–39. Whereas the prior statute required a relationship of sorts between the *separable controversy* and the other claims in suit—*see, Lewin* and *Tillman, supra* —section 1441(c) requires a "more complete disassociation." Thus, section 1441(c) turns the prior law on its head. The prior law allowed removal of an entire case on the basis of a *separable* claim, but never on the basis of a *separate* claim. Section 1441(c) allows removal of an entire case on the basis of a *separate* claim, but not on the basis of a *separable* claim.

Therein lies the constitutional problem. *Gibbs* purports to set a constitutional limit for federal question jurisdiction. It says that a state law claim may be heard by a federal court exercising its federal question jurisdiction only if the state law claim is *sufficiently related* to the federal claim, *i.e.*, if the claims arise from a common nucleus of operative fact and are claims that a plaintiff would be expected to assert in a single proceeding. Section 1441(c), however, exceeds that limit. It allows the removal of state law claims along with a federal claim only if they are *sufficiently unrelated* to each other. As *Finn* interpreted section 1441(c), it is clear that a federal claim cannot be both "separate and independent" for purposes of 1441(c) and "arise from a common nucleus of operative fact" for purposes of supplemental jurisdiction. The two tests appear mutually exclusive. As such, section 1441(c) is unconstitutional insofar as it allows the removal of state law claims which, under *Gibbs,* fall outside the federal question jurisdiction of the federal courts.[12]

The Court is not the first to recognize this problem. As early as 1953, even prior to the Supreme Court's decision in *Gibbs,* one commentator discussed the problem in great detail and declared "that a 'separate and independent' non-federal claim is not constitutionally within the jurisdiction of the federal courts." Lewin, 66 Harv.L.Rev. at 434. Chief Judge Posner, citing the Lewin article, recognized the same problem thirty years later in dicta concerning the possible reach of section 1441(c) in federal question cases:

> So construed, however, section 1441(c) would raise constitutional questions.... For a combination of two claims one of which is completely unrelated to any claim within the federal district courts' original jurisdiction may not be one case within the meaning of Article III of the Constitution, in which event the unrelated claim would be outside that jurisdiction.

*Thomas,* 740 F.2d at 483. The problem has been recognized by other courts as well. *See, Samaroo v. Samaroo,* 743 F.Supp. 309, 316–17 (D.N.J.1990); *Contemporary Services Corp. v. Universal City Studios, Inc.,* 655 F.Supp. 885, 890, fn. 6 (C.D.Cal.1987);

---

12. Two federal district courts suggest that the two standards may not be completely exclusive of each other. *See, Moralez v. Meat Cutters Local 539,* 778 F.Supp. 368, 369–70, fn. 2 (E.D.Mich. 1991); *Moore v. DeBiase,* 766 F.Supp. 1311, 1318–19, fn. 13 (D.N.J.1991). These courts reason that "separate and independent" claims may fall into two categories: (1) Those with enough of a relation to the federal claim so as to be related but separate and independent from the federal law claim; and (2) those totally unrelated to the federal law claim. *Id.* As for the latter category, these courts agree that using 1441(c) to remove such claims would be unconstitutional. However, as for the former, these courts suggest that such claims, although separate and independent from the federal claim, might "still be sufficiently related to avoid potential constitutional infirmity." *Moore,* 766 F.Supp. at fn. 13. The Court disagrees. In order to avoid constitutional infirmity, it is not enough that there be *some* relationship between the federal claim and the state law claim. Rather, the relationship must satisfy the *Gibbs* standard, and if it satisfies *Gibbs,* then reliance upon section 1441(c) is unnecessary and superfluous. If the relationship does not satisfy *Gibbs,* the fact that the claims are still somewhat related cannot keep them in federal court, and the use of section 1441(c) for this purpose is unconstitutional.

*Adolph Coors Co. v. Sickler,* 608 F.Supp. 1417, 1428 (C.D.Cal.1985). Indeed, based on this constitutional problem and other considerations, Judge Posner concluded that "it is hard to find a function for section 1441(c) in federal-question cases...." *Id.* at 484.

Despite the questions surrounding the constitutionality of using section 1441(c) in federal question cases, Congress amended the statute in 1990 to limit its use to federal question cases, turning the statute on its head yet again. Today, the statute reads as follows:

> Whenever a separate and independent claim or cause of action *within the jurisdiction conferred by section 1331 of this title,* is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed....

28 U.S.C. § 1441(c) (emphasis added).

Now that section 1441(c) is limited to federal question cases, subsequent courts and commentators have reiterated Professor Lewin's and Judge Posner's suspicions concerning the constitutionality of section 1441(c). *See, Salei,* 913 F.Supp. at 1004–1010; *Cedillo v. Valcar Enterprises & Darling Delaware Co., Inc.,* 773 F.Supp. 932, 935, fn. 3 (N.D.Tex.1991); McFarland, *supra,* 54 Ohio St.L.J. at 1080–1086. Indeed, Judge Rosen's decision in the *Salei* case expressed more than a suspicion; it declared section 1441(c) unconstitutional. *Salei,* 913 F.Supp. at 1010. Judge Rosen, recognizing that *Gibbs* established the constitutional limits of a federal court's pendent jurisdiction, concluded that section 1441(c) expanded that jurisdiction further than *Gibbs* allows:

> This Court thus confronts a puzzle of constitutional dimensions. The Court first concluded that Plaintiff's claims do not satisfy the *Gibbs* standard, because they do not all "derive from a common nucleus of operative fact." It must follow that Plaintiff's two distinct sets of claims, if taken together, exceed the boundaries of a constitutional "case." The Court then con-

cluded that Plaintiff's federal claim is "separate and independent" from his state claims within the meaning of § 1441(c). That "separate and independent" requirement being satisfied, § 1441(c) purports to authorize removal of the "entire case" to this Court. Yet, in light of the Court's determination that *Gibbs* has not been satisfied, Plaintiff's entire state court "case" is broader in scope than the "cases" this Court is permitted to hear under Article III, § 2 of the Constitution. Accordingly, if § 1441(c) is viewed, upon an entirely straightforward reading of its plain language, as authorizing removal of Plaintiff's entire state court action to this Court, then § 1441(c) purports to empower this Court to undertake an unconstitutional act. *See Cedillo v. Valcar Enters. & Darling Delaware Co.,* 773 F.Supp. 932, 935 n. 3 (N.D.Tex.1991) (noting the "potentially troublesome" constitutional issues raised by § 1441(c)); *see also* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3724, at 402–03 (2d ed. 1985) ("Yet another problem ... is whether Section 1441(c) is constitutional in federal question cases.").

*Id.* at 1005. More recent commentators reach the same conclusion as Judge Rosen:

> The correct, broad definition of claim for purposes of supplemental jurisdiction leaves no constitutional room for section 1441(c), as amended in 1990, to operate. Separate claim removal jurisdiction today can apply only to a theory of recovery completely factually unrelated to the federal question. Such a factually discrete theory is beyond the *Osborn* constitutional case, as the limits were defined in *Gibbs.* Consequently, that operation is beyond the limited authority of the federal courts granted by the Constitution.

McFarland, 54 Ohio St.L.J. at 1086.[13]

Not all commentators agree, however. The most developed objections were voiced

---

13. *See also,* Oakley, *Recent Statutory Changes in the Law of Federal Jurisdiction and Venue: The Judicial Improvements Acts of 1988 and 1990,* 24 U.C. Davis L.Rev. 735, 749 (Spring, 1991):

> It is unclear what was gained by leaving section 1441(c) at play in federal-question cases. There is considerable doubt whether the Constitution permits section 1441(c) removal jurisdiction to be exercised over the entire case in most

by the late Professor Moore. Professor Moore supported the constitutionality of section 1441(c) in federal question cases, even after *Gibbs* and the 1990 amendment to the statute. His basic reasoning was as follows:

A broad and liberal construction of Article III of the Constitution, in favor of federal judicial power is proper; its language has a living flexibility.... In an of itself the fact that the district court's removal jurisdiction under § 1441(c) is broader than its original jurisdiction means only that statutory removal is broader than *statutory* original jurisdiction. Unless we are prepared to hold that the federal courts acted unconstitutionally in connection with separable controversies from 1875 to 1948, and have acted and still are acting unconstitutionally in connection with the removal of certain other suits that are well beyond *statutory* original jurisdiction, such as state criminal prosecutions of federal officers, we should not be excited by § 1441(c).

. . . . .

A harder case, perhaps, is where there is no diversity to support removal; claim 1 involves a federal matter warranting removal, but claim 2 involves only a local, and unrelated matter. While this suit could not be brought originally in the federal district court under the Gibbs doctrine, the fact that claim 2 is unrelated to claim 1 does not necessarily put it beyond the pale of ancillary jurisdiction....

The authority conferred on Congress by the Constitution is not limited to a legislative course of perfection. It does not seem unwise, to us, that Congress has provided for a removal of the entire action, with discretion in the district court to remand claim 2 if it thinks this is proper. But assuming lack of legislative wisdom, that in itself does not invalidate § 1441(c).

And in *State Farm Fire & Casualty Company v. Tashire* the Supreme Court laid to rest any doubts as to the constitutionality of removal under § 1441(c) of an entire case involving multiple plaintiffs or multiple defendants where complete diversity is lacking, but where diversity exists as to at least one separate and independent claim. In such cases the claims, if properly joined, may be totally unrelated. It follows from the *Tashire* decision that the constitutional validity of § 1441(c) is not affected where original federal jurisdiction over the separate and independent claim is based on a federal question rather than diversity.

*Moore's Federal Practice 3D*, § 107 App. 106[3] (emphasis in original).

As argued by Professor McFarland, "[a] number of unbridged chasms mar this argument." McFarland, 54 Ohio St.L.J. at 1084. First, it is simply not the case that Article III is interpreted broadly with respect to the subject matter jurisdiction of federal courts. Quite the contrary, the standard presumption, so well-established that it needs no citation, is that federal courts are courts of limited jurisdiction, and that Article III is interpreted strictly in light of that fact. *Id.* Second, Professor Moore was wrong to say that section 1441(c) simply extends statutory removal jurisdiction beyond *statutory* original jurisdiction. *Gibbs* established a constitutional limit on the supplemental jurisdiction of federal courts, not a statutory limit, and section 1441(c) exceeds this *constitutional* limit by allowing federal courts to consider state law claims which do not satisfy the *Gibbs* jurisdictional test. Third, declaring section 1441(c) unconstitutional does not imply that federal courts acted unconstitutionally in allowing the removal of *separable controversies* from 1875 to 1948. As indicated earlier, a *separable controversy* required a logical relation between the separable claim and the nonremovable claim(s), a test similar to the *Gibbs* "common nucleus of operative fact" test. *Separate claims*, a concept very similar to section 1441(c)'s "sepa-

cases qualifying for section 1441(c) removal. The statute requires that the nonremovable claim be "separate and independent" of the removable federal claim. Given the construction of "separate and independent" adopted in *American Fire & Casualty Co. v. Finn,* it is commonly understood that claims "separate and independent" enough to qualify for section 1441(c) removal are necessarily claims that do not arise from a single "case or controversy" under the test laid down for the outer constitutional limits to the supplemental doctrine of pendent jurisdiction in *United Mine Workers v. Gibbs.*

rate and independent claim," were not removable under the predecessor to section 1441(c). Fourth, while Article III may not require "a legislative course of perfection," it certainly requires that the legislature not exceed the powers conferred upon it by Article III. *Gibbs* established the limit of Congress' power in this regard, and section 1441(c) exceeds that limit. Finally, Professor Moore read *Tashire* too broadly. *Tashire* allowed non-diverse claims to be joined with diverse claims in an interpleader suit in federal court because complete diversity is a *statutory* requirement, not a constitutional requirement. The Constitution, *Tashire* explained, requires only minimal diversity, and minimal diversity was the standard Congress adopted for federal interpleader cases. The degree of relationship between the claims simply was not an issue in *Tashire*. Moreover, as Professor McFarland points out, interpleader claims all seek and involve a common *res*, which means they probably arise from a "common nucleus of operative fact." McFarland, 54 Ohio St.L.J. at 1084, fn. 108. Professor Moore's assertion that the interpleader claims in *Tashire* were unrelated for purposes of supplemental jurisdiction was probably incorrect.

The foregoing convinces the Court that, to the extent section 1441(c) purports to allow the removal to federal court of state law claims which are factually unrelated to a "separate and independent" federal claim, the statute is unconstitutional.[14] Accordingly, Martin's reliance on this provision for removal purposes is ineffective to bring those claims within the jurisdiction of this Court.

## III

■ The Court must still determine whether plaintiffs' state law claims fall within the scope of the Court's supplemental jurisdiction. That is, Martin based his removal petition primarily on section 1441(c), but in the alternative he premised removal on sections 1441(a) & (b). Of course, as indicated above, Martin cannot have it both ways. If the state law claims are sufficiently related to the ERISA claim for purposes of supplemental jurisdiction under *Gibbs* and 28 U.S.C. § 1367, then they are not separate and independent for purposes of section 1441(c). If the state law claims are separate and independent from the ERISA claim as required by section 1441(c), then they are not sufficiently related for purposes of pendent jurisdiction.[15]

The pleadings to date warrant a conclusion that the state law claims fall outside the Court's supplemental jurisdiction and that the ERISA claim is indeed "separate and independent" from the state law claims. Generally speaking, the ERISA claim involves factual allegations quite distinct from those involved in the state law claims and seeks relief different from that sought through the state law claims. First, the state law claims are asserted jointly against

---

**14.** The Court hesitates to declare section 1441(c) entirely unconstitutional, as it is suggested that some very narrow uses of the statute may survive constitutional scrutiny. For example, Lewin's article suggests that the statute might operate where the separate and independent claim is a federal question and the other claim is a diversity claim. Lewin explains that, if any defendant to the diversity claim were a resident of the forum, that claim would not be removable under section 1441(b), but because it is constitutionally within the original jurisdiction of the federal courts, it could be removable under 1441(c). The same would apply if there is only minimal diversity vis-a-vis the nonremovable state law claim. Article III of the Constitution only requires minimal diversity; complete diversity is a *statutory* requirement that can be avoided by removing under section 1441(c). *See,* Lewin, 66 Harv.L.Rev. at 442, fn. 48; *see also, State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530–31, 87 S.Ct. 1199, 1203–04, 18 L.Ed.2d 270 (1967) (noting that complete diversity is only a statutory requirement and that the Constitution authorizes diversity jurisdiction "so long as any two adverse parties are not co-citizens."). Another possible application is where the unrelated nonremovable claim falls within the jurisdiction of the federal courts but is subject to a statutory bar against removal, such as state court claims filed against railroads under the Federal Employers' Liability Act, or diversity claims filed in state court to enforce rights under state workers' compensation laws. *See,* Oakley, *supra,* 24 U.C. Davis L.Rev. at 749–50, fn. 45.

**15.** Martin's lawyers seemed to think the ERISA claim was separate and independent from the state law claims; they expressly stated the same in their Notice of Removal and they relied upon section 1441(c) as their first and primary basis for removal jurisdiction.

Martin, Jardas and Splitek in their capacity as fiduciaries of the general corporate finances. The ERISA claim, on the other hand, is asserted against Martin alone and in his capacity as trustee of the corporation's pension and 401(k) plans. The funds and assets of the latter plans are legally and physically distinct from the general funds and assets of the corporation. Second, the state law claims seek an accounting of the corporation's general finances, and compensatory and punitive damages for any corporate funds Martin may have converted to his own personal use with the help of Jardas and Splitek. The ERISA claim does not seek damages *per se,* but rather "a declaration, clarification and enforcement of ... rights under [certain pension] plans, including but not limited to the[ ] right to future benefits...." [16] Third, the state law claims are based on factual allegations concerning Martin's misuse of corporate credit cards and corporate operating funds for personal purchases. The ERISA claim is based upon Martin's alleged "mismanage[ment]" of the pension and 401(k) plans by "erroneously allocating investments, profits and losses and by making investments unilaterally without the consent of or consultation with the other shareholders." (Plaintiffs' Final Pretrial Report at 3–4.) The foregoing strikes the Court as two separate and distinct sets of factual allegations, one set giving rise to the state law claims, the other set giving rise to the federal law claim. Indeed, the only relationship between the claims is that they arose out of the parties' general professional association. "This loose nexus is not enough to warrant the assertion of supplemental jurisdiction." *See e.g., Stadler v. McCullouch,*

949 F.Supp. 311, 313–14 (E.D.Penn.1996) (fact that ERISA claim and state law claims arose out of the same employment relationship insufficient for supplemental jurisdiction).

## IV

◼ The next question concerns the scope of the Court's remand order. Clearly, the state law claims against Martin, Jardas and Splitek, as well as Jardas' counterclaim, are remanded to state court for lack of subject matter jurisdiction. The ERISA claim against Martin, however, remains in federal court as a separate "case" properly removed under section 1441(a). *See, Thomas,* 740 F.2d at 483; *see also, Salei,* 913 F.Supp. at 1010–13. The question arises, therefore, whether Martin's state law counterclaims can remain in this Court. The answer is no. Under federal law, only "compulsory counterclaims" fall within the Court's supplemental jurisdiction. *Hart v. Clayton–Parker and Associates, Inc.,* 869 F.Supp. 774, 776–77 (D.Ariz.1994). "[P]ermissive counterclaims require their own jurisdictional basis." *Id.* at 776. Compulsory counterclaims are those which "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." *Id.* (quoting, Fed.R.Civ.P. 13(a)). The test is "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* (quoting, *Pochiro v. Prudential Ins. Co. of America,* 827 F.2d 1246, 1249 (9th Cir.1987).[17]

---

16. To be fair, the ERISA claim in the amended complaint does assert that Fullin and Manda are entitled to certain "benefits" under the plans and states, vaguely, that "the total amount of those benefits is largely dependent upon the court's or jury's determinations with respect to the claims stated above." (Amended Complaint at ¶ 51.) Subsequent pleadings do not explain the latter statement, and the same is too thin a thread upon which to hang the subject matter jurisdiction of this Court. Removal jurisdiction is construed strictly, and any doubts are resolved against removal. *See, Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993).

17. These counterclaims were first asserted in state court, of course, not federal court. For pleading purposes, the Wisconsin statutes do not draw a distinction between compulsory counterclaims and permissive counterclaims; a defendant may assert any counterclaim he has against the plaintiff regardless of its relationship to the plaintiff's claim. Wis.Stat. § 802.07(1). However, Wisconsin does recognize such a distinction for *res judicata* purposes. *See, A.B.C.G. Enterprises, Inc. v. First Bank Southeast, N.A.,* 184 Wis.2d 465, 515 N.W.2d 904 (1994). The *A.B.C.G.* case recognized a "common-law compulsory counterclaim" rule which requires a defendant to file a counterclaim if his claim, "when

■ Using this test, it is clear that Martin's counterclaims do not fall within the Court's supplemental jurisdiction. Martin's counterclaims assert that Fullin and Manda failed to make certain payments called for by the Separation Agreement, and also claim that the conversion charges leveled against Martin defamed him and interfered with his contract with a local hospital. Such claims arise out of the facts and circumstances regarding Martin's alleged misuse of corporate credit cards and corporate checking accounts, and the Separation Agreement that resulted because of those allegations. They bear no logical connection to the ERISA claim asserted against Martin, just as the other state law claims in this action bear little if any connection to the ERISA claim. Indeed, judicial economy and fairness would not be served unless Martin's counterclaims are remanded to state court along with the other state law claims, because they are all intrinsically related. Accordingly, Martin's counterclaims are remanded to state court.

### V

In light of the foregoing, the only aspect of the current summary judgment motions which the Court has jurisdiction to decide is Martin's motion vis-a-vis the ERISA claim brought against him. Martin argues that a release executed by the plaintiffs in connection with the Separation Agreement serves to waive or release plaintiffs' ERISA claim. It is undisputed that the Separation Agreement included mutual release and reservation of rights clauses. (Borowski Aff., Ex. H at 9–10.) Martin reserved the right to assert defamation claims against Manda and Fullin. (Id.) Fullin and Manda reserved the right to assert claims for conversion and an accounting against Martin. (Id.) All other claims,

known or unknown, arising out of the parties' prior contractual arrangements were mutually released:

> **Mutual Release on Contracts.** Except as provided in 11.a. and 11.b. above, and except for the rights to make accounting adjustments set forth in this agreement, all of the parties to this agreement mutually release each other with respect to all claims, known or unknown, arising out of prior contractual arrangements between or among any of the parties. This agreement shall supersede all prior contractual relationships and agreements, either oral or written, between or among any and all of the parties.

(Id.) The question is whether this release applies to plaintiffs' ERISA claim. The answer is both "yes" and "no".

■ Plaintiffs' argue that the release does not apply at all because they were induced to sign it by fraud on Martin's part. It is true that, like any contract, a general release that one party was induced to sign by the fraud of another is unenforceable. *See, Caulfield v. Caulfield,* 183 Wis.2d 83, 92, 515 N.W.2d 278 (Ct.App.1994) (quoting, *Bank of Sun Prairie v. Esser,* 155 Wis.2d 724, 731, 456 N.W.2d 585, 588 (1990)). But the fraud plaintiffs rely upon in this regard is the same alleged fraud giving rise to the dispute initially, *i.e.,* Martin's misrepresentation of the corporate finances, with the assistance of Jardas and Splitek, in order to convert corporate funds to his own personal use. However, by the time the Separation Agreement was signed, Manda and Fullin had already learned that the prior financial statements of the corporation were inaccurate and that Martin had engaged in the possible conversion of corporate assets. Indeed, it was that discovery

brought in a subsequent, separate action, would nullify the initial judgment or impair rights established in the initial action." *Id.,* 184 Wis.2d at 474, 515 N.W.2d 904. This is not as broad a definition of "compulsory counterclaim" as that imposed by the federal rules. Wisconsin's "compulsory counterclaim" would seem to be a subset of the federal compulsory counterclaim. That is, a defendant's counterclaim may arise out of the same transaction or occurrence as the plaintiff's original claim(s), but not be so related that a judgment on the counterclaim would nullify a judgment on the plaintiff's claim or impair rights

established by the resolution of the plaintiff's claim. Conversely, it is unlikely that a judgment on the defendant's counterclaim would nullify or impair a judgment on the plaintiff's original claim(s) unless there was some factual or legal connection between the claims. Thus, if Martin's counterclaims are not compulsory under the federal definition, they are probably not compulsory under Wisconsin's narrower definition. In any event, the federal rule and definition applies for purposes of determining a federal court's supplemental jurisdiction.

which led to the Separation Agreement, and which caused Fullin and Manda to expressly reserve their right to pursue a conversion claim against Martin:

> KCA, Fullin and Manda are of the belief that Martin may have improperly converted, or wrongfully taken, monies of KCA prior to his termination of employment with KCA. This separation agreement shall not act as a waiver of any such claims; those claims are expressly preserved.

(Borowski Aff., Ex. H at 9–10.)

■ As plaintiffs admit in their own briefing, a fraudulent inducement defense or claim requires a showing of justifiable reliance. *Caulfield*, 183 Wis.2d at 92–93, 515 N.W.2d 278. Here, Fullin and Manda could not justifiably rely upon representations they already knew to be false. Sensing this, they argue that they did not realize "how badly they had been deceived" and did not "discover[ ] the extent of Martin's actions" until after a post-separation audit conducted pursuant to the Separation Agreement. (Plaintiffs' Response Brief at 5, 9.) But the Wisconsin Supreme Court holds that one cannot "rely upon a financial statement that is known to him to be false .... even though the falsity of the statement was more extreme than known at the time by the recipient of the statement." *First Credit Corp. v. Behrend*, 45 Wis.2d 243, 250, 172 N.W.2d 668 (1969). Accordingly, Fullin and Manda cannot escape enforcement of the mutual release on a fraudulent inducement theory.

■ It is undisputed that the parties agreed that Martin would manage and serve as trustee for the corporation's money purchase pension plan and 401(k) plan. (Amended Complaint at ¶ 13; Borowski Aff., Exs. F & G.) Thus, any claims arising out of Martin's actions in this regard are claims arising out of a "prior contractual arrangement[ ] between ... the parties," within the scope of the mutual release. However, the release can only apply to claims that had accrued prior to the date it was signed. The release does not purport to release claims that might arise from any actions taken post-separation, and it would be unusual for a release to waive future claims or causes of action. Accordingly, summary judgment is granted on plaintiffs' ERISA claim insofar as it is based on specific actions taken by Martin prior to the date of the Separation Agreement. However, insofar as the ERISA claim is based on specific actions taken by Martin post-separation, and/or seeks a declaration concerning plaintiffs' rights to post-separation or future plan benefits, summary judgment is denied.

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' state law claims, and Jardas' and Martin's counterclaims, are remanded to state court;

2. Martin's motion for summary judgment with respect to plaintiffs' ERISA claim is granted-in-part and denied-in-part, consistent with the Court's decision herein.

**SO ORDERED.**